ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SENSITECH INC.AND DONALD W. BERRIAN ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 04-11483 (MLW) |
| TIME & TEMPERATURE COMPANY, d/b/a TIME 'N TEMPERATURE CORPORATION ) ) ) ) | |
| Defendant. ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO
TRANSFER VENUE**

**I.**

**INTRODUCTION**

This lawsuit for patent infringement is merely the latest act in a now long-running

vendetta by plaintiff Sensitech, Inc. ("Sensitech") to acquire by forced sale its much

smaller, but substantially more innovative competitor, defendant Time 'N Temperature

Corporation ("Time 'N Temperature"), a family-owned business that has manufactured

temperature recording equipment for over 32 years.[1]  Sensitech's vendetta began in

January of 2001, when Sensitech sent Time 'N Temperature a vaguely worded letter which

for all apparent purposes was merely a solicitation letter offering to license the patents now

at issue in this case and nothing more.[2]  In February of 2001, Sensitech sent Time 'N

---

[1] Pohle Decl. ¶ 1.
[2] Pohle Decl. ¶ 8.

Temperature a second letter demanding a response to its offer.[3]  In March of 2001, Time

'N Temperature responded, by letter, requesting a clarification of the meaning of

Sensitech's letters.  *Id.*  Sensitech never replied.[4]

Subsequently, more than a year transpired before Sensitech in May of 2002, sent

Time 'N Temperature a letter offering to purchase the company.[5]  Time 'N Temperature

being fully aware of Sensitech's predatory practice in acquiring at least one former

competitor, felt it had little choice but to negotiate.  *Id.*  Thereafter, a series of email and

letter exchanges occurred wherein Time 'N Temperature offered to sell to Sensitech for a

sum certain.[6]  Sensitech immediately rejected the offer and thereafter posed, by letter, the

following question to Time 'N Temperature: *"[H]ow low and how long could we offer

rebates in the market before we spent our way through $10,000,000?"*  *Id.*  Not

surprisingly, shortly thereafter, negotiations completely broke down at which time

Sensitech's Chief Executive Officer, Eric B. Schultz, called Time 'N Temperature's Chief

Executive Officer, Budd T. Pohle, and stated: "I want you out of the business."[7]

Two years later, on June 29, 2004, after watching the growing market success of

Time 'N Temperature's most recent innovative product, Sensitech decided to strike by

filing this non-meritorious lawsuit in a forum 3000 miles distant from Time 'N

Temperature's home.  However, as will be fully discussed below, Time 'N Temperature

almost entirely lacks contacts with Massachusetts.  Therefore, this case should be

dismissed for lack of personal jurisdiction and improper venue, or in the alternative, venue

should be transferred to the Central District of California.

## II.

---

[3] Pohle Decl. ¶ 9.
[4] Pohle Decl. ¶ 10.
[5] Pohle Decl. ¶ 11.

## LEGAL STANDARD FOR EXERCISING JURISDICTION

With regard to the federal constitutional due process analysis of the defendant's contacts with the forum state in patent cases, the Federal Circuit has consistently held that it does not defer to the interpretations of other federal and state courts. *Graphic Controls v. Utah Medical Products, Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). However, when interpreting the meaning of state long-arm statutes, the Federal Circuit defers to the interpretations of the relevant state and federal courts, including their determinations regarding whether such statutes are intended to reach to the limits of federal due process. *Id.* at 1385.

Per Federal Circuit law, a two-prong inquiry governs the determination of whether a court may properly exercise personal jurisdiction over an out-of-state defendant. *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376 (Fed. Cir. 1998). First the defendant must be within the reach of the long-arm statute of the state within which the district court sits. *Id.* Second, the court's exercise of jurisdiction must comply with the precepts of federal due process as delineated in *International Shoe Co. v State of Wash.*, 386 U.S. 310, 66 S.Ct. 154 (1945), and its progeny.[8]  *Id.*

---

[6] Pohle Decl. ¶ 12.

[7] Pohle Decl. ¶ 13.

[8]  The Due Process Clause at issue here is the Due Process Clause of the *Fifth Amendment. Beverly Hills Fan*, 21 F.3d 1558, 1560 n.1 (Fed. Cir. 1994). The Supreme Court's constitutional jurisprudence of personal jurisdiction includes only state and diversity cases, (4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.1 at 305 (1987 & Supp. 1994)), and thus explains only the demands of the Fourteenth Amendment's Due Process Clause, rather than that of the Fifth Amendment. *Akro Corporation v. Ken Luker*, 45 F.3d 1541, 1544 (Fed. Cir. 1995). However, the Federal Circuit nonetheless applies the "minimum contacts" standard of *International Shoe* to questions of personal jurisdiction in federal question cases arising under the patent laws. *Id.* at 1545.

## III.

## LEGAL STANDARD FOR A MOTION TO DISMISS FOR LACK OF JURISDICTION

In establishing a district court's jurisdiction over a defendant, the plaintiff bears the burden of demonstrating that the forum state's long-arm statute has been met and that the exercise of personal jurisdiction comports with the strictures of due process. *Electronics For Imaging, Inc. v. Jan R. Coyle and Kolbet Labs*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Ordinarily, a plaintiff cannot rest upon its pleadings but is obliged to produce evidence of specific facts establishing jurisdiction. *Id.* When evaluating whether the plaintiff has made a prima facie showing of personal jurisdiction, in the absence of an evidentiary hearing, the district court must construe all factual disputes in the pleadings and affidavits in the light most favorable to the plaintiff. *Akro Corporation v. Ken Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

## IV.

## ANALYSIS OF MASSACHUSETTS' LONG ARM STATUTE IS SUBSUMED BY THE CONSTITUTIONAL DUE PROCESS STANDARDS

Because the Supreme Court of Massachusetts has interpreted that state's long-arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States," *Automatic Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423, 424 (1972); *accord Tatro v. Manor Care, Inc.*, 416 Mass. 763, 625 N.E.2d 549, 553 (1994), the analysis need go no further. In such a case, pursuant to First Circuit procedural law, the Massachusetts' long-arm statute is complied with if the requirements of due process are met. *Richard A. Daynard v. Ness, Motley et al.*, 290 F.3d 42, 52 (1st Cir. 2002) ("When a state's long-arm statute is coextensive with the

outer limits of due process, the court's attention properly turns to the constitutional standards.").

The Supreme Court in *International Shoe* and its progeny established a two-part test for establishing whether the exercise of jurisdiction comports with due process. *Deprenyl Animal Health, Inc. v. The University of Toronto Innovations Foundation*, 297 F.3d 1343, 1350 (Fed. Cir. 2002). First, the defendant must have sufficient minimum contacts with the jurisdiction. *Id.* Second, the exercise of jurisdiction must be reasonable and fair. *Id.*

## V.

## TIME 'N TEMPERATURE LACKS SUFFICIENT MINIMUM CONTACTS FOR THIS COURT TO EXERCISE GENERAL JURISDICTION

Where a defendant's contacts are continuous and systematic, due process permits the exercise of general jurisdiction. *Deprenyl*, 297 F.3d at 1350 ("General jurisdiction arises when a defendant maintains 'continuous and systematic contacts' with the forum state [such that jurisdiction would be fair] even where the cause of action has no relation to those contacts.").

In the instant case, Time 'N Temperature *does not* regularly:

- conduct business in Massachusetts (Pohle Decl. ¶ 29);

- have agents, sales representative or distributors of any kind in Massachusetts (Pohle Decl. ¶ 29);

- directly market any of its products, via any advertising medium, to consumers in Massachusetts (Pohle Decl. ¶ 30);

- use Massachusetts as a transshipment point for its products (Pohle Decl. ¶ 27);

- own or lease any real estate in Massachusetts (Pohle Decl. ¶¶ 16, 17 and 26).

Lastly, Time 'N Temperature is not licensed to do business in Massachusetts. Pohle Decl. ¶ 23. In sum, Time 'N Temperature entirely lacks any form of continuous and systematic contacts with Massachusetts that would render it subject to general jurisdiction in this forum. Therefore, general jurisdiction is not an issue here. In this case, the question is: Does Time 'N Temperature have sufficient minimum contacts for this Court to exercise specific jurisdiction?

## VI.

## TIME 'N TEMPERATURE LACKS SUFFICIENT MINIMUM CONTACTS FOR THIS COURT TO EXERCISE SPECIFIC JURISDICTION

In *Akro Corporation v. Ken Luker*, 45 F.3d 1541, the Federal Circuit established a three-pronged minimum contacts test for determining the propriety of a district court's exercising specific jurisdiction as follows: (1) the defendant must have purposely directed its activities at the forum state. (2) the cause of action must arise out of or relate to those activities; and (3) the assertion of personal jurisdiction must be reasonable and fair. *Akro at 1545-46; see also 3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376 (Fed. Cir. 1998) ("We have followed this test consistently in this Circuit and are bound to follow it here.").

**A.**     <u>**Lack Of Contacts Or Activities Directed Towards Massachusetts**</u>.

Addressing the first prong of the test, Time 'N Temperature has a marked paucity of contacts with Massachusetts, much less activities purposely directed towards the forum. For example, Time 'N Temperature *does not*:

- own any or lease real property of any kind in the Commonwealth of Massachusetts (Pohle Decl. ¶ 16);

- own any vehicles registered in the Commonwealth of Massachusetts (Pohle Decl. ¶ 22);

- direct any advertising specifically to the Commonwealth of Massachusetts via any advertising medium (Pohle Decl. ¶ 30);

- have any employees, distributors, sales representatives or agents in the Commonwealth of Massachusetts (Pohle Decl. ¶ 29);

- have any employees, distributors, sales representatives or agents outside of the Commonwealth of Massachusetts who are authorized to conduct business within the forum (Pohle Decl. ¶ 29);

- maintain a website allowing for direct sales to residents of the Commonwealth of Massachusetts (Pohle Decl. ¶ 31);

- maintain an office in the Commonwealth of Massachusetts (Pohle Decl. ¶ 17);

- have any telephone numbers or facsimile numbers listed in the Commonwealth of Massachusetts, nor does it have an answering or message service in the Commonwealth of Massachusetts (Pohle Decl. ¶ 24);

- have any mailing addresses in the Commonwealth of Massachusetts (Pohle Decl. ¶ 24);

- have any trans-shipment points in the Commonwealth of Massachusetts (Pohle Decl. ¶ 27); or

- have any bank accounts in the Commonwealth of Massachusetts (Pohle Decl. ¶ 28).

**B.    Time 'N Temperature's Few Contacts With Massachusetts Are Too Attenuated To Allow This Court to Properly Exercise Jurisdiction.**

Time 'N Temperature's contacts with the forum are limited to twice, within the last 12 years, attending a trade show in Boston, a single letter, and a few random and fortuitous sales.

**1.    The Trade Show**

Time 'N Temperature attended an international seafood trade show in Boston on or about the year 1995 and again on or about the year 1996. Pohle Decl. ¶ 32. While Time 'N Temperature did exhibit its products at this tradeshow—no sales of any products to residents of Massachusetts occurred. *Id*. Moreover, such exhibitions are specifically directed towards international customers—not residents of the Commonwealth of Massachusetts. *Id*.

**2.    Time 'N Temperature's Sales in Massachusetts**

Time 'N Temperature has reviewed its records and determined that is has sold no more than $9400 worth of products of all types to residents of Massachusetts within the last six years. Pohle Decl. ¶ 33. These sales represent no more than *1/10 of 1%* of Time 'N Temperature's total sales during the same time period. *Id*. Such sales as do occur are not the result of advertising or other marketing activities specifically directed at residents of the Commonwealth of Massachusetts. *Id*. Rather, Time 'N Temperature

advertises in national trade magazines, wherein such advertising is directed at a national audience. *Id*. Such national advertising, on rare occasions, generates *random and fortuitous* orders from residents of Massachusetts. *Id*. *Isolated sales are not sufficient to render a defendant subject to suit in a foreign jurisdiction. Cf. Beverly Hills Fan*, 21 F.3d 1558, 1566 (Fed. Cir. 1994), citing *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559 (1980) ("If the sale of a product of a manufacturer . . . is not simply an isolated occurrence . . . but arises from the efforts of the [defendant] to . . . directly . . . market its product . . ., it is not unreasonable to subject it to suit.").

### 3.    Time 'N Temperature's letter to Senistech

Time 'N Temperature's only other contact with the forum state is a single letter, dated March 6, 2001, sent to Sensitech in response to two nebulously worded letters from Sensitech wherein in the first "solicitation" letter, dated January 16, 2001, Sensitech offered three patents for license (and notably did not request any response), while in the second letter, dated February 28, 2001, Sensitech requested a response to the first letter.[9]

Time 'N Temperature's paucity of contacts with the forum, de minimis sales in the forum, and complete lack of activities purposefully directed towards residents of the forum, render an exercise of specific jurisdiction by this Court on these facts virtually untenable. Such an exercise would violate the constitutional purpose of requiring sufficient minimum contacts, i.e. to ensure that "non-residents have fair warning that a particular activity may subject them to litigation in the forum." *Beverly Hills Fan*, 21 F.3d

---

[9] True and corrects copies of Sensitech's letters of January 16, 2001 and February 28, 2001, and of Time 'N Temperature's letter in response dated March 6, 2001, are attached to the Pohle Decl. as Exhibits "A," "B" and "C," respectively.

1558, 1565 (Fed. Cir. 1994).

**C.    Sensitech's Cause Of Action For Patent Infringement Does Not Arise Out Of Time 'N Temperature's De Minimis Contacts With Massachusetts.**

Addressing the second prong of the test, the Court must next decide whether Sensitech's cause of action arises out of Time 'N Temperature's sparse contacts with Massachusetts. *Akro Corporation*, 45 F.3d at 1547.

**1.    The Trade Show and the March 6, 2001 Letter to Senistech**

Patent infringement occurs when someone without authority makes, uses, offers to sell or sells a patented invention." 35 U.S.C. § 271(a).  Time 'N Temperature's letter to Sensitech, dated March 6, 2004, is merely a request for clarification (Pohle Decl. ¶ 10). Thus, this letter cannot give rise to Sensitech's cause of action.  Likewise, the mere attendance and exhibition of products at an international trade show, which coincidentally happens to be located in the forum, and at which no sales to residents of the forum occurred, cannot, standing alone, give rise to Sensitech's cause of action.  Moreover, the products that were exhibited at the trade show were mechanical temperature data loggers (Pohle Decl. ¶ 32), whereas the patents now at issue are directed towards a particular design for an electronic data logger.

**2.    Time 'N Temperature's Sales in Massachusetts**

Again, no more than *1/10 of 1%* of Time 'N Temperature's total sales over the last six years have been made to residents of Massachusetts and none of these sales have resulted from advertising specifically directed towards the forum.  Pohle Decl. ¶ 33. Moreover, in its complaint, Sensitech has glaringly *failed to identify* even a single of Time 'N Temperature's products which it alleges to be infringing.  Many of Time 'N Temperature's sales are of improved versions of its original temperature recording

machines first introduced in 1972, or long before the filing of the patents Sensitech alleges

are infringed. Pohle Decl. ¶ 34. Lacking even basic knowledge regarding which of its

products are alleged to be infringing, Time 'N Temperature cannot determine if any of its

random and fortuitous sales to residents of Massachusetts have ever involved the sale of

any, yet to be identified, allegedly infringing product(s). Moreover, the burden of proving

this basic jurisdictional fact does not rest upon Time 'N Temperature, the burden rests

squarely upon plaintiff Sensitech.

   Sensitech cannot rest upon its pleadings, but is obliged to come forward with actual

evidence of specific facts of sales of allegedly infringing products. *Boit v. Gar-Tec*

*Products*, 967 F.2d 671, 675 (1ˢᵗ Cir. 1992) ("The plaintiff ordinarily cannot rest upon the

pleadings, but is obliged to adduce 'evidence of specific facts" essential to jurisdiction.);

*Electronics For Imaging*, 340 F.3d at 1350 (the plaintiff bears the burden of establishing

minimum contacts). Lacking evidence that any allegedly infringing products have ever

been sold in Massachusetts, this Court must find that Sensitech's cause of action for patent

infringement does not arise out of Time 'N Temperature's miniscule sales in

Massachusetts. Moreover, as the Supreme Court suggested in *World Wide Volkswagen*

*Corp. v. Woodson*, isolated sales are not sufficient to render a defendant subject to suit in a

foreign jurisdiction. *See World Wide* at 297.

### D.    Exercising Jurisdiction Over Time 'N Temperature Would Be Neither Reasonable Nor Fair

   As a preliminary matter, Time 'N Temperature notes that the First Circuit has

adopted a sliding scale approach in accessing unreasonableness. That is the First Circuit

requires defendants to make less of a showing to establish unreasonableness when the

plaintiffs showing of minimum contacts is weak. *Ticketmaster-New York v. Alioto*, 26

F.3d 201, 210 (1ˢᵗ Cir. 1994) (showing of minimum contacts was frail enough to be

overcome by defendant's inconvenience in litigating in the forum). The Federal Circuit

has considered, though not yet adopted, this test. *Deprenyl*, 297 F.3d 1356 ("[W]e leave

for another day the question of whether to adopt the First Circuit's sliding scale approach

to the reasonable inquiry."). As described above, Time 'N Temperature lacks the *vast*

*majority* of contacts with Massachusetts upon which jurisdiction is typically predicated.

Moreover, Sensitech has provided no specific allegations in its pleadings, which if

assumed to be true, would establish that its purported cause of action arises from what few

contacts do exist. Thus, an exercise of jurisdiction is not proper on the facts here.

However, even if the Court were to entertain exercising jurisdiction, said exercise would

be neither reasonable nor fair for the following reasons:

### 1.    The Burden of Forcing Time 'N Temperature To Defend in Massachusetts Is Unreasonable

Time 'N Temperature is a California Corporation with its principal and sole place

of doing business in Ventura, California. Pohle Decl. ¶ 2. All of Time 'N Temperature's

employees are located in California. Pohle Decl. ¶ 18. The vast bulk of Time 'N

Temperature's sales take place in California. Pohle Decl. ¶ 19. Most, if not all, of Time

'N Temperature's documentary evidence is located in California. Pohle Decl. ¶ 19. Most,

if not all, of Time 'N Temperature's witnesses (including non-party witnesses) reside in

California—none reside in Massachusetts. Pohle Decl. ¶ 21. In addition, some or all of

Time 'N Temperature's non-party witnesses may choose not to voluntarily disrupt their

lives by traveling to Massachusetts. Being beyond the subpoena power of this Court, Time

'N Temperature is likely to incur substantial prejudice because critical non-party witnesses

are unavailable.

Moreover, Time 'N Temperature is a small corporation which can ill afford the

costs of patent infringement litigation. Pohle Decl. ¶ 35. The costs of defending against

Sensitech's meritless lawsuit will impose severe financial hardship on Time 'N Temperature. Pohle Decl. ¶ 35. The costs of paying travel and lodging expenses for witnesses to travel and stay in Massachusetts, and of retaining local counsel in Massachusetts, and of the many additional costs, such as transporting documentary evidence to Massachusetts, will substantially increase Time 'N Temperature's costs. Such costs are likely to impair Time 'N Temperature's ability to defend itself against Senistech's meritless claims.

Sensitech by contrast is large corporation with major operations in Fresno, California (Pohle Decl. ¶ 6) less than 275 miles from the Central District of California courthouse and comparatively next door to Time N. Temperature in Ventura, California. Requiring Sensitech to prosecute this lawsuit in California imposes minimal or no burden on Sensitech and arguably, given the paucity of any facts which would establish any merit to Sensitech's claims, equity demands that Sensitech be required to prosecute this lawsuit in California.

## 2. California Has A Greater Stake In The Outcome Of This Litigation Than Massachusetts

California has a substantial interest in protecting its residents from unwarranted claims of patent infringement. *Deprenyl Animal Health, Inc. v. The University of Toronto Innovations Foundation*, 297 F.3d 1343, 1356 (Fed. Cir. 2002). Moreover, California has a greater stake in the outcome of this litigation. Being a small corporation, if Time 'N Temperature were to lose this lawsuit its very existence would be imperiled with consequent adverse effects on its employees, all citizens of California. By contrast, if Sensitech loses, no foreseeable hardship will be suffered by any of its employees. On the other hand, if Sensitech wins, the Commonwealth of Massachusetts may or may not see an infinitesimal increase in revenue.

## VII.

### VENUE IS IMPROPER HERE

That relevant venue statute, 28 U.S.C. § 1391(b), provides in pertinent part that: "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides[10] . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found if there is no district in which the action may otherwise be brought." Here, venue is not proper in this District under any of the three subsections of the venue statute.

Venue is improper under subsection (1), because Time 'N Temperature is not subject to personal jurisdiction in this District, as discussed at length above. Nor can venue be exercised under subsection (2), because, from the discussion above, it is clear that no "substantial part of the events or omissions giving rise to the claim" occurred in Massachusetts. Finally, Time 'N Temperature cannot be "found" in Massachusetts pursuant to subsection (3), since it has no offices, employees, assets or any other physical presence here. Pohle Decl., ¶¶ 16-19, 22-30.

Because venue is not proper in Massachusetts, the Court should dismiss this lawsuit pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a)(requiring a court to dismiss or transfer a case filed in wrong venue).

---

[10] Under Section 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

## VIII.

## IF THE COURT IS NOT INCLINED TO DISMISS, VENUE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

The federal change of venue statute provides that: "For the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division in which it may have been brought." 28 U.S.C. § 1404(a). Transfer of venue is a procedural matter, therefore the Federal Circuit applies the law of the regional circuit. *Winner International Royalty Corporation V. Ching-Rong Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) ("Our review of the district court's denial of Wang's motion to transfer, as a procedural matter, is governed by the law of the regional circuit in which it sits . . . ."). *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32; 108 S. Ct. 2239 (1988) (classifying section 1404(a) as a procedural rule).

### A.    <u>Venue is Proper in the Central District of California</u>.

Section 1404(a) provides that a case may be transferred only to a district where the action might have been brought. *Coady v. Ashcraft & Gerel*, 223 F.ed 1, 11 (1st Cir. 2000). 28 U.S.C. § 1400(b) controls venue in patent infringement cases. *Johnston and Ramsey v. IVAX Corp.*, 1987 U.S. Dist Lexis 1277, *1 (D.Mass.). The statute provides that: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). It is undisputed that Time 'N Temperature is a California corporation[11] residing in the Central District, thus the Central District of California is district where the action could have been brought.

---

[11]  See Pohle Decl. ¶ 2; Complaint, ¶ 3.

**B.**    <u>First Circuit Transfer of Venue Standard</u>

"Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S. Ct. 2239 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S. Ct. 805 (1964)). A determination of venue under § 1404(a) lies in the sound discretion of the district court. *Cianbro Corp. v. Curran-Lavoie,* 814 F.2d 7, 11 (1st Cir. 198). The factors which the court considers are the convenience of the parties and witnesses, and the interest of justice. *Coady v. Ashcraft & Gerel,* 223 F.3d 1, 11 (1st Cir. 2000); 28 U.S.C. § 1404(a). There is a presumption in favor of plaintiff's choice of forum and the defendant has the burden of showing that transfer is warranted. *Berrigan v. Greyhound Lines, Inc.,* 560 F.Supp. 165, 169 (D.Mass. 1982). If the balance is equal or only slightly in favor of the movant, the court should not transfer the case. *Lee v. Ohio Casualty Insurance Co.,* 445 F.Supp. 189, 192 (D.Del. 1978).

**1.**    <u>Convenience Of The Parties Weighs Strongly In Favor Of Transferring Venue To The Central District Of California.</u>

Time 'N Temperature's headquarters and sole place of business is located in Ventura, California. Pohle Decl. ¶ 2. All of the company's business operations take place in California. Pohle Decl. ¶ 18. The vast majority of Time 'N Temperature's sales are made to fresh foods or produce shippers located in California. Pohle Decl. ¶ 19. All of the company's employees, witnesses and documents are located in California. Pohle Decl. ¶¶ 20-21. Thus, most, if not all significant discovery will be based in California. By contrast, Time 'N Temperature has no offices, agents or representatives in Massachusetts. Pohle

Decl. ¶¶ 17, 26 and 29. Plaintiff Sensitech, on the other hand, maintains offices in Fresno, California or less than 275 miles from the Central District of California courthouse. Moreover, Time 'N Temperature is informed and believes that Sensitech conducts the majority of its business with regard to the fresh food shipping industry in the State of California. Pohle Decl. ¶ 6.

Given Time 'N Temperature's complete lack of offices or personnel in Massachusetts, requiring Time 'N Temperature to defend in that forum, about 3000 miles from the company's home, imposes an undue financial burden which is likely to severely prejudice the company's ability to defend itself from unwarranted claims of patent infringement. By contrast, requiring Sensitech to prosecute in the Central District of California, a forum less than 275 miles from one of Sensitech's major centers of operations, imposes only a minimal, if any, additional burden on plaintiff. In view of the above, convenience of the parties weighs heavily in favor of transferring venue to the Central District of California.

**2.    Convenience Of The Witnesses Weighs Strongly In Favor Of Transferring Venue To The Central District Of California**

As stated above, all of Time 'N Temperature's employee-witnesses are located in California. Requiring these witnesses to travel to Massachusetts imposes significant disruption upon their lives and significant additional costs upon Time 'N Temperature.

a.    **All Of Time 'N Temperature's Witnesses Are In California Beyond The Subpoena Power Of Massachusetts**

More importantly, Time 'N Temperature expects that many non-party witnesses may prove to be critical to its defense. These witnesses reside in California or well beyond the subpoena power of this Court and Time 'N Temperature expects that most may be unwilling to disrupt their lives to travel to Massachusetts. Unless Time 'N Temperature is able to compel the appearance of its expected non-party witnesses, its defense will be unduly and unfairly prejudiced. By contrast, many of Sensitech's employee-witnesses are likely to be located at its Fresno, California facility. Thus, the convenience of the witnesses lies in heavily in favor of transferring venue to the Central District of California.

3.    **The Interests Of Justice Favor Transfer To The Central District Of California.**

Patent rights exist throughout the United States. Thus, no particular forum is more or less favorable to Sensitech based on the nature of the right asserted. While the Commonwealth of Massachusetts does have an interest in providing a forum for Massachusetts companies to enforce patent rights against alleged infringers, that interest is substantially attenuated here given Time 'N Temperature's de minimis sales in the forum and otherwise almost complete lack of contacts with the forum. California by contrast has a stronger, more direct interest in the outcome of a patent infringement case against a California corporation where most, if not all, of the witnesses and documentary evidence is located. See, Jarvis v. Marrieta Corp., 1999 U.S. Dist. LEXIS 12659 at *19 (N.D. Cal. Aug. 12, 1999) (holding that where plaintiff and defendant are from different districts, district where documentary evidence, witnesses, and actions at issue are located has a greater local interest in the controversy). Furthermore, Massachusetts' stake in Sensitech's claim is negligible given Time 'N Temperature's negligible sales in that forum. By

contrast, this lawsuit imperils the very existence of a California corporation. Thus, the interests of justice factor also weighs strongly in favor of transfer.

In view of Sensitech's unwarranted and malicious allegations, Time 'N Temperature has instituted suit against Sensitech in the Central District of California (Case No. CV 04-6553 WJR) for the affirmative claims of patent misuse, unfair competition and violations of state and federal antitrust laws. This Court should exercise its discretion and transfer this case to the Central District of California because all of the factors the Court must balance, namely, (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice, weigh heavily in favor of such a transfer.

## IX.

## CONCLUSION

For all of the foregoing reasons, the Court should grant defendant Time 'N Temperature's motion to dismiss, or in the alternative, should transfer venue to the Central District of California.

Respectfully submitted,

CESARI AND McKENNA, LLP

Dated: August 9, 2004

Thomas C. O'Konski (BBO No. 378,265)
Attorneys for Defendant
Time 'N Temperature Company
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500

Of Counsel:

Daniel M. Cislo, Esq., CA Bar No. 125,378
David B. Sandelands, Esq., CA Bar No. 198,252
CISLO & THOMAS LLP
233 Wilshire Boulevard, Suite 900
Santa Monica, California 90401
Telephone: 310-451-0647
Facsimile: 310-394-4477

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum of Points and Authorities In Support of Defendant's Motion to Dismiss, Or, in the Alternative, to Transfer Venue is being deposited with the United States Postal Service on August 9, 2004, in an envelope addressed to counsel for plaintiff, Sensitech Inc. and Donald W. Berrian:

> John T. Gutkoski
> Day, Berry & Howard LLP
> 260 Franklin Street
> Boston, MA  02110-3179
>
> Matthew J. Becker
> Day, Berry & Howard LLP
> CityPlace I
> Hartford, CT  06103-3499
>
> Catherine Dugan O'Connor
> Day, Berry & Howard LLP
> One Cantebury Green
> Stamford, CT  06901-2047

CHIDOCS02-623168-v1