**ORIGINAL**

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SENISTECH INC. AND DONALD W. BERRIAN, | ) Case No. 04-11483MLW )  ) |
| Plaintiff, | ) DECLARATION OF BUDD T. ) POHLE IN SUPPORT OF |
| v. | ) DEFENDANT'S MOTION TO ) DISMISS, OR, IN THE |
| TIME & TEMPERATURE COMPANY, d/b/a TIME 'N TEMPERATURE CORPORATION | ) ALTERNATIVE, TO TRANSFER ) VENUE ) |
| Defendant. | ) ) ) |

## DECLARATION OF BUDD T. POHLE

I, Budd T. Pohle, declare:

1. I am an officer of a party to this action and am over the age of eighteen (18) years old. I make this declaration of my own personal knowledge or on information and belief where so stated. If called as a witness, I could and would competently testify to the truth of the matters asserted herein.

2. I am the President and Chief Executive Officer of Time 'N Temperature Company ("Time 'N Temperature"). My job responsibilities include oversight of Time & Temperature's day-to-day operations, as well oversight of Time & Temperature's product development, manufacturing, sales, advertising, and marketing in the United States. Time

& Temperature is a California corporation with its principal place of business located in Ventura, California.

3. I started Time 'N Temperature in 1972. The company is a closely held corporation of which I am the majority owner of the company's shares. Time 'N Temperature designs and sells temperature recording devices (commonly referred to as "data loggers"). Time 'N Temperature's data loggers are primarily used by shippers of fresh produce and other perishable food products to record temperature in the truck or shipping container during transit. I designed Time 'N Temperature's first temperature recording device back in 1972. Now, 32 years later, Time 'N Temperature still sells a substantial quantity of temperature recording devices based upon my original design.

4. Over the last three decades, Time 'N Temperature has developed several other temperature recording devices which have progressively taken advantage of advances in technology, particularly in the realm of electronics. I personally have overseen the development of each and every one of Time 'N Temperature's products. At no time, have I ever copied any of the products of Sensitech, Inc. [What does the last sentence add to the instant motion?]

5. I have read the complaint filed against Time 'N Temperature by Sensitech, and have forwarded that document to Time 'N Temperature's patent counsel, Chip Bissell, Esq., whose offices are in Ventura, California. Mr. Bissell has informed me that in his opinion none of Time 'N Temperature's products infringe any of Sensitech's patents as alleged in the complaint. [This last sentence could arguably create an early waiver of the privilege.]

6. Time 'N Temperature and Sensitech are competitors in the field of temperature recording devices at least in so far as they are used in the fresh food shipping

industry. This is a relatively small industry with only a few significant players. As a result, through reading industry journals and attending tradeshows, I am generally familiar with the size and scope of Sensitech's operations. I am informed and believe that Sensitech has a major operations center in Fresno, California. I am also informed and believe that the majority of Sensitech's business and sales with regard to the fresh food shipping industry take place in California.

7.    I am also aware of Sensitech's aggressive practice of suing competitors. I am informed and believe that Sensitech first sued and then later bought a former competitor by the name of Cox Technologies, Inc. I am also informed and believe that Sensitech sued yet another competitor, Marathon Products. Also, Time 'N Temperature's Director of Operations, Ms. Janet Williams, was deposed by Sensitech, on or about the year 2000. I believe this deposition may have occurred in connection with Sensitech's lawsuit against Cox technologies.

8.    In January of 2001, Time & Temperature received a letter at its offices in Ventura, California, dated January 16, 2001, from an attorney, one Bruce F. Falby. I read this letter. In his letter, Mr. Falby stated that his law firm represented Sensitech, and moreover informed us that Sensitech was the exclusive licensee of three patents (U.S. Patents Nos. 4,816,822, 5,313,848 and Re. 36,200) which Sensitech was making available for license. I recall briefly reviewing these patents and determining that the technology described was of no interest to Time & Temperature. A true and correct copy of Mr. Falby's letter of January 16, 2001 is attached to this declaration as Exhibit "A."

9.    In March of 2001, Time & Temperature received a second letter from Mr. Falby at its offices in Ventura, California, dated February 28, 2001, requesting a response to his letter of January 16, 2001. I read this letter as well. Since Mr. Falby's letter of January 16, 2001, merely offered patents for license and did not request that Time &

Temperature do, or not do, anything, and did not require any sort of response, I was perplexed by this second letter and therefore referred both letters to Time & Temperature's general counsel (the Law Offices of Lowthrop, Richards, McMillan, Miller, Conway & Templeman in Oxnard, California) for response. A true and correct copy of Mr. Falby's letter of February 28, 2001 is attached to this declaration as Exhibit "B."

10. At my direction, in a letter dated March 6, 2001, Time & Temperature's general counsel of the Lowthrop, Richards firm in Oxnard, California responded to Mr. Falby's two letters and requested a clarification of the purpose of the letters. I am informed and believe that neither Mr. Falby nor anyone else at his firm, or from Sensitech, ever responded to this letter. I am also informed and believe that Mr. Falby did not return a phone call placed to him by Time & Temperature's general counsel on March 1, 2001, as indicated in the above letter. A true and correct copy of Time and Temperature's general counsel's letter of March 6, 2001 is attached to this declaration as Exhibit "C."

11. Time 'N Temperature's next contact with Sensitech occurred when Sensitech sent us a letter to us in Ventura, California, dated May 3, 2002, wherein they offered to buy Time 'N Temperature. In view of Sensitech's past practices, I decided explore the possibility of selling Time 'N Temperature to Sensitech.

12. The course of these negotiations consisted of a series of letters and telephone calls. These negotiations, which were conducted by us from our offices in Ventura, California, ultimately were not successful because Sensitech rejected my offering price and suggested that it would cheaper for them to drive Time 'N Temperature out of business through a below cost rebate program on temperature data loggers. Specifically, Sensitech posed, by letter, the following question to Time 'N Temperature: *"[H]ow low and how long could we offer relates in the market before we spent our way through $10,000,000?"*.

4
DECLARATION

13. My last communication with Sensitech in regards to these negotiations was a telephone call from Sensitech's Chief Executive Officer, Eric B. Schultz, to me at my office in Ventura, California, in May of 2002, wherein among other things, Mr. Schultz stated: "I want you out of the business."

14. About two years passed after the breakdown in negotiations with Mr. Schultz, when Time 'N Temperature received without warning, the complaint in the instant case.

15. Sensitech is suing Time 'N Temperature in the Commonwealth of Massachusetts. I believe found this to be improper for at least the following reasons:

16. Time & Temperature does not own or lease any real or personal property in the Commonwealth of Massachusetts.

17. Time & Temperature does not maintain offices or any other type of facilities in Massachusetts.

18. All of Time 'N Temperature's employees are located in California and essentially all of the company's business operations take place in California.

19. The vast bulk of Time 'N Temperature's sales take place in California.

20. All of Time 'N Temperature's documents relevant to the issues raised in Sensitech's complaint are located in California.

21. Most or all of Time 'N Temperature's expected witnesses likely to have information relevant to the issues raised in Sensitech's complaint reside in California—none reside in Massachusetts.

22. Time & Temperature does not own any vehicles registered in the Commonwealth of Massachusetts.

23. Time & Temperature is not licensed to do business in the Commonwealth of Massachusetts and does not maintain an office in Massachusetts.

24. Time & Temperature does not have any telephone numbers or facsimile numbers listed in the Commonwealth of Massachusetts, nor does it have an answering or message service in the Commonwealth of Massachusetts.

25. Time & Temperature does not have any mailing addresses in the Commonwealth of Massachusetts.

26. Time & Temperature does not own or lease any warehouses or storage facilities in the Commonwealth of Massachusetts.

27. Time & Temperature does not have any trans-shipment points in the Commonwealth of Massachusetts.

28. Time & Temperature does not have or maintain any bank accounts in the Commonwealth of Massachusetts.

29. In addition to the above, Time & Temperature does not have any employees, agents, distributors or sales representatives located in the Commonwealth of

Massachusetts and does not regularly conduct business in the Commonwealth of Massachusetts. None of the company's employees, agents, distributors or sales representatives located outside of Massachusetts are authorized to transact business within the State of Massachusetts.

30. Time & Temperature does not direct any advertising, marketing efforts or campaigns into the Commonwealth of Massachusetts. The company does advertise in national trade magazines. As a result of this national advertising, the company does occasionally make a sale to a Massachusetts company. However, as stated in paragraph 33 below, these sales represent a miniscule portion of the company's total sales and are sporadic at best.

31. Time & Temperature maintains a website at www.smartchek.com. Although this website would be accessible in Massachusetts, it is passive in that it provides information only. It does not have any online sales capability.

32. Time 'N Temperature attended an international seafood trade show in Boston in or about the year 1995 and again in or about the year 1996. I was present on behalf of the company for the 1995 show. I have directed the appropriate staff at Time 'N Temperature to review the company's records and determined that while Time 'N Temperature did exhibit its products at these tradeshows—no sales of any products to residents of Massachusetts occurred on either occasion. Also, at both the 1995 and 1996 show, the company's records indicate that Time 'N Temperature exhibited only mechanical data loggers. Time 'N Temperature attended these tradeshows specifically for the purpose of reaching international customers—not residents of the Commonwealth of Massachusetts. Time 'N Temperature has not attended any trade shows in Massachusetts since.

33. I directed Time 'N Temperature's staff to review our records and have determined that the company has sold no more than $9400 worth of products of all types to residents of Massachusetts within the last six years. These sales represent no more than *1/10 of 1%* of Time 'N Temperature's total sales during that time period.

34. I have read Sensitech's complaint and it does not identify which of Time 'N Temperature's products it purports to be infringing its patents. Without such information, I cannot determine if Time 'N Temperature has ever sold any allegedly infringing products in Massachusetts.

35. As a result of Sensitech's complaint, I have been forced to retain litigation counsel on Time 'N Temperature's behalf. Time 'N Temperature's litigation counsel has discussed the potential costs of this litigation with me and such costs will, over time, impose a severe financial hardship on the company, particularly if it is required to defend itself in the distant forum of Massachusetts given that the company's business operations are essentially restricted to California, as discussed above.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on August __, 2004 in Ventura, California.

Budd T. Pohle