ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SENSITECH INC. AND DONALD W. BERRIAN,<br><br>Plaintiff,<br><br>v.<br><br>TIME & TEMPERATURE COMPANY, d/b/a TIME 'N TEMPERATURE CORPORATION<br><br>Defendant. | Civil Action No. 04-11483 (MLW) |

**REPLY TO PLAINTIFF'S OPPOSTION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

I.

**BACKGROUND**

Sensitech is a large company which by its own admission has facilities in Massachusetts, Washington, and California. DiRubio Decl. ¶¶ 24-28. Though Sensitech purports that being required to prosecute this case in California would impose an undue burden on the company, this assertion is belied by Sensitech's further admission that it maintains offices in Fresno, Davis and Upland, California. DiRubio Decl. ¶ 25. Sensitech's Upland, California office is at most 40 miles from the Central District of California Courthouse in Los Angeles. Sensitech further admits that is has an unspecified number of field service representatives and contractors working in California. DiRubio Decl. ¶ 26.

Throughout its Opposition, Sensitech has made great efforts to portray Time 'N Temperature as an equally large competitor with similar resources at its disposal. This is simply not correct. Unlike Sensitech, Time 'N Temperature is a small company

1

comprising a total of ten employees. Pohle Decl. ¶ 3. Of those ten employees, only two are management personnel. *Id.* The first of these is the company's president and founder, Budd T. Pohle, who is now over 80 years of age, and who has little interest in seeing his company financially ruined due to the costs of defending against this lawsuit which, from his well-founded view, entirely lacks merit. *Id.* Time 'N Temperature's second management employee is Janet Williams, the company's operations manager. *Id.* Also, unlike Sensitech, Time 'N Temperature merely has a single office in rural Ventura County, California. *Id.* Time 'N Temperature has no offices, personnel or representatives of any kind in Sensitech's chosen forum of Massachusetts, a locale 3000 miles distant from Time 'N Temperature's sole facility. *Id.*

Sensitech filed the instant lawsuit against Time 'N Temperature without warning. Pohle Decl. ¶ 9. Sensitech neither sent Time 'N Temperature a cease and desist letter nor in any other manner informed Time 'N Temperature of its belief that any of the company's products infringe any claim of any patent owned or licensed by Sensitech. *Id.*

In fact, Sensitech seems to be making every effort to keep Time 'N Temperature "in the dark" regarding its allegations. In its minimalist complaint, Sensitech failed to allege which of Time 'N Temperature's products infringed which of Sensitech's patents. Sensitech likewise failed to identify even a single claim which it alleged to be infringed. This apparent deliberate policy appears to be designed to force Time 'N Temperature to expend precious financial resources in analyzing all of its products against each claim of each of the patents in suit.

Only in response to the instant motion has Sensitech finally shed some light on its contentions in the following minimalist statement: "Plaintiffs believe that Time 'N Temperature's SmartChek and QC Max monitors[1] infringe the '200 patent."[2] Opposition, p. 2. This statement is surprising in view of the fact that the SmartChek has

---

[1] Sensitech in its papers uses the term "monitor" to refer to temperature recording devices. Time 'N Temperature prefers the term "recorder."
[2] This reference refers to U.S. Patent No. 36,200, ("the 200 patent") one of two patents alleged, without specificity, to be infringed.

2

been on the market for over seven years. Pohle Decl. ¶ 5. In all that time, Sensitech failed to make its beliefs regarding the alleged infringement known. Pohle Decl. ¶ 9. Moreover, the SmartChek was an innovative recorder which included features not found in any of Sensitech's recorders. In fact, within one year of the SmartChek's introduction, Sensitech subsequently incorporated at least one of the SmartChek's features into its own product line. Pohle Decl. ¶ 5.

The SmartChek and the QC Max were independently developed by Mr. Pohle and Ms. Williams who now find it particularly galling that fully seven years after the SmartChek's introduction, and after the copying by Sensitech of one or more of the SmartChek's features, Sensitech now sues Time 'N Temperature alleging that the SmartChek infringes a yet-to-be-identified claim of the '200 patent. Pohle Decl. ¶ 5. Mr. Pohle and Ms. Williams view Senistech's suit as non-meritorious. Their view is fully supported by that of outside patent counsel who has advised the company that no reasonable grounds exist for Sensitech's claims. Pohle Decl. ¶ 10.

Thus, the question arises, why is Sensitech now bringing suit against Time 'N Temperature seven years after the allegedly infringing product was first introduced to the market? Quite simply, Sensitech, a company which actively sought and achieved monopoly power in the market for temperature monitors for use in shipping perishable foods, is now willfully misusing that monopoly power by "bullying" Time 'N Temperature, a small competitor which has dared to produce innovative products and to undercut Senistech's pricing, into exiting the market. Time 'N Temperature is presently addressing Sensitech's willful misuse of monopoly power in Case No. CV 04-6553 WJR, presently pending in the Central District of California. A copy of the complaint in the above-identified case is attached to the Pohle Decl. as Exhibit "F."

## II.

## INTRODUCTION

Sensitech's opposition consists of little more than blatant "off-the-mark" speculation and innuendo masquerading as fact supported by nothing more than the self-

3

serving declarations of two of Sensitech's management personnel, all in an apparent attempt to mislead the Court into believing that Time 'N Temperature is engaged in ongoing, and by implication, "booming" business, with Massachusetts' largest supermarket chains. Nothing could be further from the truth.

Sensitech's misleading speculation, innuendo, and misstatements of fact are discussed in detail below.

### III.
### SENSITECH'S MISSTATEMENTS OF FACT

#### A.   Time 'N Temperature Has No Direct Arrangements Or Ongoing Programs With Supermarket Chains in Massachusetts

Sensistech speculates that "TnT has made direct arrangements with receivers of perishable goods [i.e. supermarket chains] whereby the receivers request that grower/shippers use TnT's monitors on shipments." Opposition, p. 4. Within limits, this portion of Sensitech's speculation is true. Because Sensitech has established such programs throughout the United States, Time 'N Temperature has developed a competing program in response.[3]  Pohle Decl. ¶ 12. However, Sensitech further Speculates that Time 'N Temperature has made numerous such arrangements with Massachusetts supermarket chains. This portion of Sensitech's speculation is false.

While, Time 'N Temperature has attempted in years past to market its recorder program to Massachusetts supermarket chains, due to Senistech's monopoly in the Massachusetts market, such efforts proved almost entirely unsuccessful and were

---

[3] Sensitech mischaracterizes the manner in which temperature monitors are sold by alleging that the majority of such monitors are sold pursuant to direct arrangements with supermarket chains rather than via direct sales to produce shippers. While this may be true of Sensitech's sales, the vast majority, or about 80% of Time 'N Temperature's sales of temperature monitors are direct sales to shippers at the point of origin in California.

4

therefore abandoned.[4] Over two years have past since Time 'N Temperature last tried to market its products in Massachusetts. Pohle Decl. ¶ 13.

In particular, Sensitech speculates that Time 'N Temperature has ongoing relationships with the following Massachusetts companies: Alphas Chelsea-MA, Big Y Food-MA, C&S Wholesale-MA, Community Suffolk-MA and Shaw's supermarkets. Opposition, p. 4. However, Time 'N Temperature has no direct relationships with any of the above supermarket chains (with the possible exception of Alphas-Chelsea with whom it may be argued that the company has a very small, non-exclusive, irregular account (see footnote 1)). Pohle Dec. ¶ 13. Sensitech either knows or should know that the above-described speculation was false, because Sensitech itself has direct arrangements with the aforementioned supermarket chains. Pohle Decl., Exhibits "D" and "E."

In fact, C&S Wholesale and Shaws, the two largest of the aforementioned companies (as identified by Sensitech), long ago informed Time 'N Temperature that they would not use Time 'N Temperature's products, preferring instead to enter into direct arrangements with Sensitech. Pohle Decl. ¶ 15. As will be illustrated below, because of Sensitech's direct arrangements with Massachusetts supermarket chains, Time 'N Temperature has been effectively shut out of the Massachusetts market for temperature monitors.

B. **Time 'N Temperature's Indirect Unit And Dollar Sales To Massachusetts Are Negligible**

Sensitech speculates that "the volume of TnT's unit and dollar sales attributable to perishable goods shipments destined for Massachusetts appears substantial." Opposition,

---

[4] As a result of its past marketing efforts, Alphas-Chelsea agreed to place Time 'N Temperature's recorders along with Sensitech's recorders on its list of approved recorders for use by shippers. The company provides an average of about eight (8) rebates per month to Alphas-Chelsea on an irregular basis. Pohle Decl. ¶ 13. While it is debatable as to whether this extremely low level of volume rises to the level of an "account," Time 'N Temperature nevertheless discloses the contact here.

5

p. 5. Sensitech is wrong. In fact, from 1997 to-date, about 490,000 temperature recorders have been used on shipments of perishable foods destined for Massachusetts. Pohle Decl. ¶ 16. During this same time period, Time 'N Temperature has paid rebates on only 2300 recorders or less than 329 units per year out of a total market of about 70,000 units per year. *Id.* Thus, Time 'N Temperature has indirectly provided less than ½ of 1% of the recorders used in Massachusetts from 1997 to-date. Moreover, those few indirect sales that do occur are not the result of any effort by Time 'N Temperature to direct its products into Massachusetts.

### C. Time 'N Temperature's Minimal Indirect Sales To Massachusetts Are The Result Of Happenstance

With the sole exception of the small, non-exclusive, Alphas-Chelsea account, what few indirect sales of Time 'N Temperature's recorders as do occur in Massachusetts are not the result of active marketing efforts purposefully directed by Time 'N Temperature to Massachusetts, nor are they the result of any "stream of commerce" created by Time 'N Temperature. In fact, Time 'N Temperature directs no advertising specifically to Massachusetts via any advertising medium (Pohle Decl. ¶ 18), nor does Time 'N Temperature presently have any employees, distributors, sales representatives or agents actively marketing its products in Massachusetts. *Id.*

Time 'N Temperature's minimal indirect sales to Massachusetts are the result of the following: Perishable foods shippers pick up their goods from California farms, wherein those goods must be shipped almost immediately due to their limited lifespan before spoilage. Pohle Decl. ¶ 17. During the hectic peak shipping season, the Sensitech recorders typically requested by Massachusetts supermarket chains are not always available in which case the perishable foods shippers have no choice but to use whatever recorders are immediately available in order to promptly make shipment. *Id.* Some, less than ½ of 1% of those immediately needed recorders for Massachusetts bound shipments happen to be Time 'N Temperature's recorders. *Id.* However, the actual point of sale of those recorders is in California. *Id.* Moreover, Time 'N Temperature has no

6

way of knowing where those recorders are destined (Pohle Decl. ¶ 11) and therefore cannot be deemed to have created a "stream of commerce" directed at Massachusetts.

### D. Sensitech's Blatant Speculation Regarding Time 'N Temperature's Indirect Sales To Shaws Is Astonishingly Incorrect And Misleading

Sensitech speculates that Time 'N Temperature sells at least 1000, and perhaps as many as 1500, monitors per year under the Shaw's program," and further speculates that Time 'N Temperature earns "gross revenue of between $23,500 and $32,500 per year for the Shaws account alone." Opposition, p. 5. Once again, Sensitech's speculation is utterly off-the-mark and therefore misleading. As stated previously, unlike Sensitech, Time 'N Temperature does not have an ongoing program or business relationship with Shaws. Pohle Decl. ¶ 13.

As explained above, Shaws has informed Time 'N Temperature that it desires that its perishable foods shippers use only Sensitech's recorders. Pohle Decl. ¶ 15. Therefore, those indirect sales by Time 'N Temperature to Shaws which do occur are the result of happenstance. These indirect sales occur only when Shaw's perishable foods shippers, at the point of origin in California, simply cannot find any Sensitech recorders when the foods must ship. Pohle Decl. ¶ 17. Thus, they turn to whatever other recorders happen to be available, some of which are Time 'N Temperature's recorders. Again, these recorders are sold at the point of origin in California and Time 'N Temperature has no way of knowing to which East Coast or Mid-Western state the recorder may ultimately be shipped. Pohle Decl. ¶¶ 11, 17.

Time 'N Temperature's records indicate that the company has provide Shaws with rebates on fewer than 700 recorders over the last 7 years or less than 100 recorders per year. Pohle Decl. ¶ 19. In other words, "a far cry" from the "at least 1000, and perhaps as many as 1500, monitors per year" as per Sensitech's speculation.[5] See, Opposition, p.

---

[5] Time 'N Temperature's total indirect sales to Massachusetts is less than 2300 recorders over the last seven years. Of these 2300 units, about 700 have been indirectly sold to Shaws.

7

5. Likewise, Sensitech's estimate of the dollar value of the indirect sales due to the Shaws account alone is off-the-mark. Again, Time 'N Temperature has no "Shaws account." Pohle Decl. ¶ 13. Moreover, Time 'N Temperature sells some of its recorders for $16.50/unit (Pohle Decl. ¶ 20), rather than the $23.50 estimated by Sensitech. Thus, Time 'N Temperature's indirect sales as a result of perishable foods shipments to Shaws are at least an order of magnitude less than Sensitech's speculative figures.

Again, it cannot be emphasized enough that these "indirect sales" as described above are exactly that: indirect. The actual sales are made to independent shippers of perishable foods at the point of origin in California. Those shippers then pass on the cost of the recorders to the end purchaser, i.e. supermarket chains. The supermarket chains then return the recorders to the manufacturer for a rebate.

### E. Other Alleged Undisclosed Contacts With Massachusetts

#### 1. The prepaid return boxes.

Sensitech speculates that "Time 'N Temperature sends pre-paid return boxes to receiver's Massachusetts warehouses." Opposition, p. 6. Yet again, Sensitech's speculation is misleading. Time 'N Temperature does not send pre-paid return boxes to receiver's warehouses in Massachusetts on a regular basis. Pohle Decl. ¶ 21. What actually happens is that Time 'N Temperature provides a pre-paid mailing label attached to each recorder sold, <u>at the point of sale in California</u>. *Id*. Thereby, Time 'N Temperature can provide the end receiver of the recorder with a rebate, no matter where the perishable foods shipment is destined. Time 'N Temperature decades ago adopted this practice, because except for those supermarket chains with which Time 'N Temperature does have a direct arrangement[6], <u>Time 'N Temperature does not know the end destination of its recorders</u>. Pohle Decl. ¶ 11. Time 'N Temperature's practice of

---

[6] Time 'N Temperature does provide pre-paid return boxes to customers with whom it has direct relationships for the bulk return of recorders. Therefore, the company likely has provided such boxes to Alphas-Chelsea on an irregular basis. The company does not send prepaid return boxes to Alphas-Chelsea on a regular monthly basis due to the exceptionally low volume of returned recorders, i.e. an average of only about 8 recorders per month.

8

providing return labels on each recorder sold, at the point of sale in California, without knowledge of the where the recorder is destined cannot be deemed to create a contact with Massachusetts under the "stream of commerce theory."

### 2. Monthly Rebate Checks.

Sensitech speculates that Time 'N Temperature "likely sent monthly rebate checks to [its] accounts in Massachusetts." Opposition, p. 6. Yet again, Senistech's speculation is incorrect. As stated previously, with the possible exception of Alphas-Chelsea (a small non-exclusive and irregular account), Time 'N Temperature does not have direct arrangements with supermarket chains in Massachusetts and therefore does not send rebate checks to "accounts." Pohle Decl. ¶ 13. Time 'N Temperature does pay rebates on the approximately 329 of its temperature recorders[7] which in any given year happen to end up in the forum (out of the approximate total market of 70,000 recorders produced by all manufacturers and destined for the forum each year). Pohle Decl. ¶ 22. As explained, *supra*, these 329 recorders are sold in California and end up in Massachusetts as a matter of happenstance, not because of any "stream of commerce" created and directed towards Massachusetts by Time 'N Temperature.

### 3. Storage Of Customer's Information For Two Years.

Sensitech speculates that Time 'N Temperature "likely continues to maintain information for its Massachusetts accounts given that TnT offered to store customer's data for two years." Opposition, p. 6. Sensitech is partially correct in that Time 'N Temperature does store temperature data for all returned recorders for a period of two years. Pohle Decl. ¶ 23. Sensitech is yet again wrong in that, as stated previously, with the possible exception of Alphas-Chelsea, Time 'N Temperature has no such relationships

---

[7] The approximate total market for recorders in Massachusetts is 70,000/year. Of this total market, in any given year, only about 329 of the recorders destined for the forum are produced by Time 'N Temperature, i.e. in any given year about 69,671 of the recorders destined for the forum are produced by other manufacturers.

9

with any Massachusetts entity. *Id.* Therefore, no direct contact exists as per Sensitech's speculation.

### 4.   Provision Of Computing Equipment.

Sensitech speculates that "TnT likely sent computing equipment into Massachusetts when it implemented its temperature monitor programs, by providing each receiver with computing equipment enabling its staff to read TnT's monitors in their warehouses." Opposition, p. 5. In yet another instance, Sensitech's speculation is "off-the-mark." From time-to-time, Time 'N Temperature as part of its early marketing efforts has offered computing equipment to supermarket chains in return for a reduced rebate on returned recorders until such time as the cost of such equipment was paid. Time 'N Temperature provided one such computer to a Massachusetts supermarket. That computer was later returned, when the customer opted to deal exclusively with Sensitech. Pohle Decl. ¶ 24.

## IV.

## TIME 'N TEMPERATURE'S CONTACTS WITH MASSACHUSETTS ARE INSUFFICIENT TO CONFER JURISDICTION

As set forth in Time 'N Temperature's instant motion and as essentially admitted by Sensitech in its opposition, Time 'N Temperature's near complete lack of traditional contacts with Massachusetts render an assertion of jurisdiction on traditional grounds inappropriate. Likewise, Sensitech's "stream of commerce" theory also fails because as described above, Time 'N Temperature's alleged indirect contacts with the forum are nothing more than "wishful thinking" by Sensitech. Time 'N Temperature has no direct arrangements with Massachusetts supermarket chains.[8] Pohle Decl. ¶ 13. Similarly, with the possible exception of Alphas-Chelsea, Time 'N Temperature has no "accounts" in

---

[8] Again, with the possible exception of Alphas-Chelsea. However, this is a non-exclusive relationship where Alphas-Chelsea has merely agreed to allow its shippers to use Time 'N Temperature's recorders. Alphas-Chelsea also allows its shipper to use Sensitech recorders and likely other manufactures recorders.

10

Massachusetts.[9] *Id.* Time 'N Temperature indirect unit and dollar sales to Massachusetts are negligible and those few indirect sales that do occur are the result of happenstance rather than an attempt by Time 'N Temperature create or direct a "stream of commerce" towards Massachusetts.

This case is unlike *Beverly Hills Fan*, 21 F.3d 1158 (Fed. Cir. 1998), where the Federal Circuit found that the defendant purposely sold the allegedly infringing products to wholesalers who it knew would then resell the products at the retail level in the forum state. In the instant case, Time 'N Temperature sells it recorders directly to shippers at the point of origin in California. Pohle Decl. ¶ 11. With the exception of the those supermarket chains with whom Time 'N Temperature has direct arrangements, Time 'N Temperature does not know the final destination of its recorders. *Id.* Perhaps more importantly, those few of Time 'N Temperature's recorders that do reach Massachusetts are not resold in the forum. Pohle Decl. ¶ 21. In fact, the recorders are no longer suitable for commercial use by the time they arrive in the forum. *Id.* In view of the above, Sensitech's "stream of commerce" theory for asserting jurisdiction must fail.

Similarly, Time 'N Temperature's other allegedly undisclosed contacts with Massachusetts are likewise the result of misleading "wishful thinking" by Sensitech. Time 'N Temperature does not directly send prepaid return boxes to Massachusetts on a regular monthly basis as alleged. Pohle Decl. ¶ 21. Likewise, the allegation that Time 'N Temperature sends monthly rebate checks to its "accounts" in Massachusetts is patently misleading because no "accounts" exist.[10] Pohle Decl. ¶ 22. Likewise, because Time 'N Temperature lacks any regular accounts in Massachusetts, no computer equipment provided by Time 'N Temperature is presently installed at any Massachusetts supermarket chain. Pohle Decl. ¶ 24.

---

[9] Again, with the possible exception of Alphas-Chelsea, where due to the low volume and irregular nature of the business, it is questionable as to whether this relationship should be deemed an account.
[10] Again, with the possible exception of Alphas-Chelsea, where due to the low volume and irregular nature of the business, it is questionable as to whether this relationship should be deemed an account.

11

Pursuant to Federal Circuit case law, Time 'N Temperature has not purposefully directed its activities to Massachusetts. *See, Akro Corporation v. Ken Luker*, 45 F. 3d at 1541. Nor would the assertion of jurisdiction be either reasonable or fair. *Id.* Analogous to the First Circuit holding in *Ticketmaster-New York v. Alioto*, 26, F.3d 201, 210 (1st Cir. 1994), here, Time 'N Temperature's contacts with Massachusetts are so weak as to render any assertion of jurisdiction by this court unreasonable and unfair given the company's inconvenience in litigating in the forum.

## V.

## VENUE SHOULD BE TRANSFERRED TO CALIFORNIA

Under § 1404(a), a district court may transfer any civil action to any other district where it may have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); see *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000). "Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805 (1964)). A determination of venue under § 1404(a) lies in the sound discretion of the district court. *Cianbro Corp. v. Curran-Lavoie*, 814 F.2d 7, 11 (1st Cir. 1987). The factors to be considered by the Court when considering a motion to transfer include the convenience of the parties and witnesses and the location of documentary evidence. *Id.* Where the plaintiff and defendant are from different districts, the district where documentary evidence, witnesses, and the actions at issue are located has a greater local interest in the controversy. *Jarvis v. Marrieta Corp.*, 1999 U.S. Dist. LEXIS 12659 at *19 (N.D. Cal. Aug. 12, 1999).

### A.    Convenience Of The Parties Weighs Strongly In Favor Of Transfer

As stated above, Time 'N Temperature has only two management employees, both of whom are also the inventors of the allegedly infringing products. Pohle Decl. ¶¶ 3, 5. The demands of this lawsuit will require both to give depositions, appear as witnesses and possibly serve as experts, as well as manage the defense of the company in addition to their regular duties of running the company. Managing all of these tasks concurrently is disrupting and will continue to disrupt Time 'N Temperature's operations. Pohle Decl. ¶ 25. Forcing either of these witnesses to travel to Massachusetts to defend charges they both, on behalf of the company, vehemently deny, can only serve to increase the disruption Time 'N Temperature is experiencing in addition to imposing an increased financial burden upon the company. As stated previously, Time 'N Temperature has no offices or other facilities in Massachusetts and does not routinely send employees to Massachusetts or have any other contacts with Massachusetts whereby this burden could be lessened. *Id.*

By contrast, Sensitech by its own admission has offices in Fresno, Davis and Upland, California (DiRubio Decl. ¶ 25), as well as in Washington and Massachusetts. Moreover, Sensitech's two declarants in support of its opposition are both management employees residing in Sensitech's Washington office (DiRubio Decl. ¶ 3; Vaught Decl. ¶ 3), and both routinely travel to Massachusetts (DiRubio Decl. ¶ 28; Vaught Decl. ¶ 12). Time 'N Temperature believes that it is likely that the above-named declarants or other Sensitech management personnel also routinely travel to Sensitech's Fresno, Davis and Upland, California offices. Therefore, should Sensitech feel the need to have management personnel monitoring the prosecution of this lawsuit in the Central District of California, it is likely that such personnel already routinely travel to California and therefore prosecution of the lawsuit in California would impose little additional burden on Sensitech.

Time 'N Temperature would further note that Sensitech has retained the Los Angeles office of Latham & Watkins to defend against Time 'N Temperature's complaint for antitrust injury filed in the Central District of California (Case No. CV 04-6553

WJR). Sensitech's ability to coordinate activities between its Massachusetts headquarters, Washington management personnel, and Massachusetts and California attorneys, is ample evidence of the ease with which Sensitech can prosecute the instant suit in California. Time 'N Temperature simply has no corresponding capability. Therefore, convenience of the parties weighs strongly in favor of transfer.

### B.    Convenience Of The Witnesses Weighs Strongly In Favor Of Transfer

In prosecuting a patent infringement case, the plaintiff need do little more during discovery other than produce the named inventors of the patent at issue. Thus, while Sensitech loudly proclaims that its "senior management, officers, accounting, product development, assembly and engineering personnel are based in Beverly, Massachusetts (Opposition, p. 16)," the fact remains that only Sensitech's patents are at issue—not its management—not its officers—not its accounting—not its products—not its assembly practices—and not its engineering. Therefore, it is quite unlikely that any of the aforementioned people would ever be required to appear as a witness in this case.

By contrast, Time 'N Temperature, to defend against Sensitech's claims, must produce virtually every individual involved in the development and sale of the allegedly infringing products. These witnesses include the following (see, Pohle Decl. ¶ 26):

Employee Witnesses

- Budd Pohle, inventor, resident of California;
- Janet Williams, inventor, resident of California;
- Phil Tripoli, sales representative, resident of North Carolina;

Third Party Witnesses

- Richard Spiedell, former sales manager, a resident of Montana;
- Mary Schilken, parts procurement, resident of California;
- Robert Schilken, design engineer, resident of California;
- Harold Meyers, website design and advertising, resident of California;
- Qeunt Osterlander, advertising; resident of California;

14

- Henry M. Bissell, Esq., patent attorney, resident of California;
- Derby Ashstone, design engineer, resident of California;
- Dan McGillicuty, temperature engineer, resident of California;
- Dean Hazard, Esq., outside corporate counsel, resident of California;
- Thomas Tignino, certified public accountant, resident of California;
- Brad Challberg, product development, resident of Taipei, Taiwan;
- William, product development, resident of Taipei, Taiwan;
- Ashley, product development, resident of Taipei, Taiwan; and
- Daniel, product development, resident of Taipei, Taiwan.

As the above list makes clear, the majority of Time 'N Temperature's critical witnesses are third-parties beyond the subpoena power of this court. Even if these witnesses were to agree to voluntarily appear, the cost of transporting its domestic and overseas third-party witnesses to Massachusetts for deposition or trial would impose a substantial financial burden on Time 'N Temperature, a small 10-employee corporation with a single office. Pohle Decl. ¶ 27.

To reduce the issue to numbers, Time 'N Temperature would need to transport 17 witnesses, most of whom are third-parties and many of those are located overseas, to Massachusetts. By contrast, Sensitech need only produce the five named inventors of U.S. Patent Re. 36,200 in California. Thus, convenience of the witnesses weighs heavily in favor of transfer.

### C. Location Of The Documents Favors Transfer

Here as well, the discovery burden on a patent infringement plaintiff is minimal. Sensitech need only produce the prosecution history of the '200 patent, a single two-inch (2") thick file. Time 'N Temperature, by contrast, must produce the entire engineering and sales history for the SmartChek and QC Max products. Time 'N Temperature cannot readily put an estimate on the total number potentially responsive documents other than to say that the company has thousands of potentially responsive sales and engineering

15

documents all of which are stored in California. Pohle Decl. ¶ 28. Thus, this factor as well weighs heavily in favor of transfer.

### D.   The Interests Of Justice Favor Transfer To The Central District Of California

Time 'N Temperature is a California corporation that has been accused without warning of patent infringement. Moreover, Sensitech is making every effort to keep Time 'N Temperature "in the dark" regarding the alleged infringement. Sensitech's "barebones" complaint is entirely devoid of any supporting facts. The complaint fails to indicate which of Time 'N Temperature's products are alleged to be infringing and likewise fails to indicate even a single allegedly infringed claim. A copy of Sensitech's factually devoid complaint is attached to the Pohle Decl. as Exhibit "G." Only in response to the instant motion has Sensitech bothered to provide Time 'N Temperature with some indication of which of the company's products it alleges to be infringing. Even now, Sensitech has yet to identify a single claim which it alleges to be infringed.

As Time 'N Temperature has plead in detail in its complaint for antitrust injury in Case No. CV 04-6553 WJR (see Pohle Decl. Exhibit "E"), presently pending in the Central District of California, this lawsuit is merely an attempt by Sensitech to further consolidate its monopoly in the market for temperature recording devices for use in the perishable foods shipping business by driving its smaller and more innovative competitor out of business. Sensitech's motive for filing this action in the remote forum of Massachusetts is clear—Sensitech's end goal is to drive Time 'N Temperature out of business via the high costs of protracted patent litigation. For all of the reasons described above, the interests of justice, weigh heavily in favor of transfer to California.

## VI.

## CONCLUSION

For all of the foregoing reasons, the Court should grant defendant Time 'N Temperature's motion to dismiss, or in the alternative, should transfer venue to the

Central District of California. Alternatively, if the Court entertains Sensitech's request to conduct limited discovery as to Time 'N Temperature's contacts with Massachusetts prior to ruling on the motion, Time 'N Temperature respectfully requests leave to simultaneously engage in limited discovery for the purposes of determining what, if any, "inquiry, reasonable under the circumstances," Sensitech engaged in before bringing this lawsuit. Time 'N Temperature believes that such limited discovery will reveal that Sensitech failed to make a reasonable inquiry regarding whether Time 'N Temperature's products infringe any claims of the patents in suit in clear violation of Rule 11 of the Federal Rules of Civil Procedure.

Respectfully submitted,

CESARI AND McKENNA, LLP

Dated: September 10, 2004

Thomas C. O'Konski BBO #377475
Attorneys for Defendant,
Time 'N Temperature Company
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500

Of Counsel:

Daniel M. Cislo, Esq., CA Bar No. 125,378
David B. Sandelands, Esq., CA Bar No. 198,252
CISLO & THOMAS LLP
233 Wilshire Boulevard, Suite 900
Santa Monica, California 90401
Telephone: 310-451-0647
Facsimile: 310-394-4477

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Reply to Plaintiff's Opposition To Defendant's Motion to Dismiss, Or, In the Alternative, To Transfer Venue is being deposited with the United States Postal Service on September 10, 2004, in an envelope addressed to counsel for plaintiff, Sensitech Inc. and Donald W. Berrian:

> John T. Gutkoski
> Day, Berry & Howard LLP
> 260 Franklin Street
> Boston, MA 02110-3179
>
> Matthew J. Becker
> Day, Berry & Howard LLP
> CityPlace I
> Hartford, CT 06103-3499
>
> Catherine Dugan O'Connor
> Day, Berry & Howard LLP
> One Cantebury Green
> Stamford, CT 06901-2047

_____