**ORIGINAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SENSITECH INC.AND DONALD W. BERRIAN<br><br>Plaintiff,<br><br>v.<br><br>TIME & TEMPERATURE COMPANY, d/b/a TIME 'N TEMPERATURE CORPORATION<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 04-11483 (MLW)

## DECLARATION OF DAVID B. SANDELANDS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT

I, David B. Sandelands, declare:

1.      I am an attorney admitted to practice before all of the courts in the State of California. I am an associate of the law firm of Cislo & Thomas, LLP ("Cislo & Thomas"), counsel of record for defendant Time 'N Temperature Corporation ("TNT"). I have personal knowledge of the facts stated herein. If called upon to testify as a witness I could and would competently do so as set forth below.

2.      Attached to this declaration as Exhibit "A" is a true and correct copy of the Record Transcript of the April 28, 2005 hearing on TNT's Motion To Dismiss Or In The Alternative To Transfer Venue.

1

3.      For the Court's convenience, attached to this declaration as Exhibit "B" are true and correct copies of the relevant pages of the Record Transcript of the April 28, 2005 hearing on TNT's Motion To Dismiss Or In The Alternative Transfer Venue which are cited to in the foregoing memorandum.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed this __6__ day of June, 2005, at Santa Monica, California.

By: _____

David B. Sandelands, Esq.

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SENSITECH, INCORPORATED      )   CA 04-11483
and DONALD BERRIAN           )   Boston, MA
v.                            )   April 28, 2005
                                  )
TIME & TEMPERATURE COMPANY    )

BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE
MOTION HEARING

APPEARANCES:

Day, Berry & Howard
by JOHN GUTKOSKI, ESQ., MATTHEW BECKER, ESQ., and
ALEX FENNELL, ATTY.,
for Plaintiffs.

Cesari and McKenna
by THOMAS O'KONSKI, ESQ., and
Cislo & Thomas
by DANIEL CISLO, ESQ.,
for Defendant.

JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577

```
 1              THE CLERK:  This is Civil Action Number
 2     04-11483, Sensitech, Incorporated versus Time &
 3     Temperature Company.
 4              Court is in session.  You may be seated.
 5              THE COURT:  Good afternoon.  Would counsel
 6     please identify themselves for the court and for the
 7     record.
 8              MR. GUTKOSKI:  Certainly, your Honor.  Good
 9     afternoon.  John Gutkoski of Day, Berry & Howard here in
10     Boston on behalf of the plaintiffs, Sensitech and Donald
11     Berrian.
12              MR. BECKER:  Your Honor, Matthew Becker of Day,
13     Berry & Howard in Hartford, Connecticut, also for the
14     plaintiffs, Sensitech and Donald Berrian.
15              MS. FENNELL:  Your Honor, Alex Fennell of Day,
16     Berry & Howard, Boston, also for the plaintiffs.
17              MR. O'KONSKI:  For the defendant, Time &
18     Temperature, Thomas O'Konski from Cesari and McKenna in
19     Boston, representing the defendant.  And with me is
20     Daniel Cislo from Cislo & Thomas in Santa Monica,
21     California.  Mr. Cislo is admitted pro hac vice.
22              THE COURT:  Okay.  I apologize for the delay in
23     starting.  Something came up.
24              We're here today on the defendant's motion to
25     dismiss or, alternatively, if that fails, to transfer the
```

3

1    case to the Central District of California.

2              I've studied the matters and, consistent with my

3    usual practice, it's going to be my goal to decide the

4    motions orally this afternoon.

5              There's one piece of information or type of

6    information I didn't discern that I'm particularly

7    interested in.

8              The defendant lists a number of third party

9    witnesses, I think, in paragraph 26 of the Poll

10   affidavit, but I'm not told anything about what they are

11   expected to say and why they might be important.

12             And, similarly, the plaintiff mentions third

13   party witnesses here, including two of the venders.  But

14   I'm not told what they might say or why they might be

15   important.

16             So I'd permit you to give me some oral

17   information on that.

18             But my present tentative view is under the very

19   liberal standards articulated by the Federal Circuit,

20   there appears to be personal jurisdiction at this point

21   because you've got a conflict in your affidavits.  The

22   plaintiffs say, essentially, you've got five people who

23   receive produce in Massachusetts who require or authorize

24   the use of the defendant's device.  The defendant seems

25   to say there's only one.  But if I understand the

4

1    standard right, I'd have to treat it as if it really is
2    five for present purposes, although it seems to me that
3    personal jurisdiction is a sufficiently close question
4    and, if the case is not dismissed and stays here, whether
5    there should be phased discovery and summary judgment on
6    that issue is a question to be addressed.
7          But I do at the moment tend to think that
8    there's barely enough to, for present purposes, establish
9    personal jurisdiction.  In part because it is such a
10   close question and in part for other reasons, I'm willing
11   to seriously consider the transfer.  I know that
12   frequently -- well, I know that the plaintiffs' choice of
13   forum deserves some weight, but that weight varies in the
14   circumstances.
15         I frankly wonder what this case is really about.
16   I don't think I've ever seen a more sparse complaint.  I
17   have concerns about whether it satisfies the requirements
18   of notice pleading.  If I've read it right, it doesn't
19   allege what the infringing devices are or what ways in
20   which they infringe.
21         And my sense is that the relative resources of
22   the parties are different, and I'm concerned that it
23   might be most fair and efficient if this case is going to
24   proceed to have it proceed in California rather than
25   disappear on personal jurisdiction on summary judgment.

```
 1                    But those are just tentative views.

 2                    It's the defendant's pair of motions.

 3                    As I said, with regard to the transfer issue,

 4      particularly the importance of -- well, who the third

 5      party witnesses are and what they would say is important

 6      to the analysis.

 7                    Why don't I let defense counsel go first.

 8                    MR. CISLO:    Thank you, your Honor.  I would

 9      like to address some of these third party witnesses.    In

10      particular, the main issue here which is raised by the

11      plaintiffs' complaint is whether or not there is

12      infringement.  And to do that, a number of witnesses

13      would be testifying, such as the design engineer, Robert

14      Schulkin (sic), in terms of what is the make up of this

15      component with this product, how does it operate.    And

16      with regard to Mary Schulkin, what parts of her component

17      actually go into the unit and how does it get assembled

18      and work, because the plaintiff will say, here are the

19      elements of our patent, and here is their function and

20      how does this work.  In addition, there will be claims as

21      to what this product actually does and how it operates,

22      and that has to do with a lot of the Web site design and

23      advertising --

24                    THE COURT:    Actually, two things.  First, pull

25      that microphone in front of you, because I'm having
```

```
 1      trouble hearing you.

 2                MR. CISLO:   Sorry, your Honor.

 3                THE COURT:   Who is the design engineer?

 4                MR. CISLO:   The design engineer is Robert

 5      Schulkin that's listed as one of our third party

 6      witnesses.   And also the parts procurement person, Mary

 7      Schulkin.   Both of them are residents of California.

 8                THE COURT:   And they don't work for TNT?

 9                MR. CISLO:   They do not, your Honor.

10                THE COURT:   Go ahead.

11                MR. CISLO:   The other issue is, of course, we

12      have Richard Spidel (sic), former sales manager, lives in

13      Montana; Harold Mayer, listed by the defendant in

14      advertising; Clint Osterlander (sic); these are all

15      people that will testify as to how the company describes

16      their unit and how it operates.   That will probably come

17      up as the other side will say, well, can you describe

18      your unit to operate a certain way publicly and now

19      you're saying it operates a different way.   So that will

20      all come up as to the description of the product, how it

21      operates, because their patent has to do with not only

22      componentry, but how that componentry actually operates.

23      We contend that there's no way in the world our

24      componentry could infringe, and we also note that this

25      was a patent that was filed and issued long ago, reissued
```

1    recently -- or not recently, several years ago, and only
2    now brought up as something that is infringed following
3    on the heels of this discussion about buying the company.
4    And we do note that the declarations of Budd Pohle go
5    unrebutted by Mr. Schultz, the CEO of the plaintiff
6    company, with regard to what actually transpired, the
7    fact that they wanted to buy his company out.  He refused
8    because the price was too low.  And then they instituted
9    these proceedings, just like they had done in other cases
10   with other competitors, so that now Sensitech has roughly
11   90 percent of the marketplace, and our client, a small
12   81-year old guy who started the business in 1972 as an
13   inventor, owner, majority shareholder of the company,
14   with a few employees -- he's the only management person
15   besides one other person -- you know, trying to, you
16   know, compete against what's going on.

17            THE COURT:  And that's one of the reasons that
18   despite the deference generally given to the plaintiff's
19   choice of forum I'm thinking seriously about transferring
20   the case.

21            MR. CISLO:  And the interest of justice is one
22   of the factors that the court can look at on that point,
23   particularly since our client is 81 years old.  He's had
24   four bypass surgeries.  I do note that the disposition
25   time in this court -- I thought California was bad at 16

8

1    months -- but, apparently, in this jurisdiction, it's 30
2    months from filing the complaint to disposition.  That's
3    pretty critical when you're an 81-year old person who
4    needs to have something resolved, in addition to the case
5    that's pending in California, which is a verified
6    complaint for federal and state antitrust claims, unfair
7    competition, as well as the declaratory judgment claim of
8    what's being claimed here, which that case will go on, no
9    matter what.  Although there is a pending motion to
10   transfer, they have answered that complaint already.  We
11   think that if this court transfers the case to
12   California, everything will be disposed of in one place,
13   especially a place they already have operations, they
14   have people.  They have an office there very close to
15   where the court is, relatively speaking.
16             THE COURT:  Couple of hundred miles.
17             MR. CISLO:  Well, compared to 3,000 miles, I
18   guess, that's a matter of degree.
19             THE COURT:  Do I remember right, they actually
20   have more than one office in California, but there's only
21   one in the Central District.
22             MR. CISLO:  That's my understanding, your
23   Honor.
24             So these are all factors that this court can
25   consider in terms of transfer.  But one other thing I'd

9

 1    like to point out on the personal jurisdiction side.  I
 2    tried, in preparing for this argument, I tried to not
 3    look at some of the attorney arguments, just look at the
 4    declarations and say, okay, what do these declarations
 5    say?  And I see that everything Budd Pohle has said is
 6    unrebutted, for the most part, and I see everything that
 7    the plaintiff has offered is all on information and
 8    belief, and there is not one single unit that can be
 9    pointed that was sold in Massachusetts.

10              THE COURT:  I thought you conceded you sell
11    about a hundred a year.

12              MR. CISLO:  Your Honor, there is a big
13    difference because, see, they're sold in California, but
14    California Growers Shipper, that's our customer.  We sell
15    to Grower Shippers.  They sell to the grocer, who's the
16    buyer.  That's the disconnect, because they think that
17    we're operating a business model like theirs.  But that's
18    the contrary.  What happens is we sell to California
19    Shipper Growers.  Those units then go from various parts
20    of the country.  And the units that could have, may have
21    ended up in Massachusetts get returned from
22    Massachusetts, but they could well have been shipped to
23    Connecticut or New Jersey and simply returned.  So there
24    is no selling of the unit in Massachusetts.

25              THE COURT:  But don't you -- doesn't the

1    evidence, including, I think, a fax from TNT, indicate
2    that you target people who buy produce in Massachusetts
3    and ask them to require or authorize the use of your
4    product by the shippers?

5            MR. CISLO:    That is not true in the sense on
6    the evidence before us, because the declarations on
7    information and belief says that our company has sent out
8    these fax blasts, but there's no evidence to suggest that
9    they've gone to Massachusetts or that anybody has acted
10   on them.    Plus, the list that they produced from somebody
11   else's Web site lists a whole bunch of other different
12   temperature devices that can be used.    So just being on
13   someone's list of acceptable devices doesn't make for a
14   sale.    And this is quite different from the Beverly Hills
15   Fan Company case where there's a stream of commerce
16   theory that you take the product and you put it in the
17   stream of commerce expecting it to be sold in, let's say,
18   Massachusetts.    That wasn't the case at all.    It was sold
19   and was sold in California.    And if by happenstance it
20   was returned from Massachusetts, that would not trigger
21   an act of infringement, because there's not offer for
22   sale or anything that would trigger an infringement.

23           So based upon the limited specific
24   jurisdictional principles, there hasn't been an act of
25   infringement that our client has perpetrated in

1      Massachusetts.

2                THE COURT:  Hold on just a minute.

3                (Short pause.)

4                THE COURT:  What I'm looking at is the David

5      Vaught declaration.  There's an attachment, exhibit A.

6      It appears to have been faxed by Smart Check.  That's

7      your product, right?

8                MR. CISLO:   That's correct, your Honor.

9                THE COURT:   It says:  Check this list for your

10     customers who request Smart Check digital recordings, and

11     you've got Alphas Chelsea; Big Y Foods, Massachusetts;

12     Azooto's (sic), Massachusetts; C & S Wholesale,

13     Massachusetts; Community Suffolk, Massachusetts; Shaw's

14     Supermarkets, I don't know if that's --

15               MR. CISLO:   And here's the big distinction.

16     These are people who have said that our Digital recorder

17     is good.  That's all that they've said, that they would

18     accept produce that came to them if it had that type of

19     digital recorder, among other recorders.  So it's not

20     like there's a special deal or relationship.  There might

21     be five or ten different recorders.  Maybe there's only

22     two now because of what's happened in the marketplace.

23     But there is not the actual act of selling to them the

24     unit that's accused of infringement to trigger the

25     specific jurisdiction, your Honor.

12

1             THE COURT:   But even offering something for sale
2    can be infringement.

3             MR. CISLO:   If it's actually being offered for
4    sale to that party and specifically targeted.  But, for
5    example, having a passive Web site, like our client has,
6    it's found in many jurisdictions not to be the type of
7    offer for sale that would trigger a specific jurisdiction
8    in Massachusetts.

9             And like I said, if you read the declaration
10   that supports this exhibit, again, it is -- there is no
11   proof that any of these people that are listed as being
12   Massachusetts entities actually bought any of these
13   units.   In fact, it's all information and belief, what's
14   my speculation.   There is nothing to suggest that (sic)
15   failed to produce one person, one invoice in
16   Massachusetts that says this unit was purchased by this
17   company in Massachusetts after being ordered from our
18   client in California.

19            So even on the personal jurisdiction what I'm
20   saying is that there shouldn't be personal jurisdiction
21   under these circumstances because it's a weird scenario,
22   I understand.   If we had that kind of business volume
23   that they had and we were selling (sic), there would be
24   personal jurisdiction, and we'd have to concede that.
25   But that's not the case here.

13

```
 1              But what I'd like to focus on is the lesser
 2     burden standard I have is on the transfer action, because
 3     I think that's where the parties are going to get
 4     judicial economy.  The jurisdictional issue, you know,
 5     we're spending a lot of time and effort in.  My client
 6     wanted to emphasize and thank you very much for having
 7     the opportunity to have an oral argument because you know
 8     how impended the court is, and it takes a long time to
 9     get cases through when you have that many cases that you
10     have; whereas, in California, they're impacted, but they,
11     I guess, have fewer cases and can get through them
12     quicker.  And when you're 81 years old, you want this
13     cloud lifted over you.  And we think that that won't not
14     happen if we have to spend a lot of time and effort
15     having him go to Massachusetts for trial or anything
16     else.  And so we're hoping that on that lesser standard
17     that we have to meet that we can convince the court that
18     there is an action already in California.  They've
19     answered it.  True, they brought a motion to transfer
20     also.  We think that Judge Ray will simply accept the
21     totality of everything if this case gets transferred, and
22     it will in essence lessen the load of Massachusetts
23     courts of one less --
24              THE COURT:  Well, I don't think that's a
25     cognizable consideration, although sometimes I get things
```

14

1    transferred to me that cause me to think that some of my
2    colleagues around the country have a different view on
3    that.

4         I wrote a decision many years ago, and I think
5    it's still sound, Brant Point versus Patch.  I mean, you
6    give deference to the plaintiff's selection of forum, but
7    the weight you give that deference varies in the
8    circumstances.  You look at the convenience of the
9    parties.  They in many cases appear to cancel each other
10   out.  One's from Massachusetts, one's from California.

11        Here, one party may be better able to travel
12   than the other.  But a key consideration in my view is
13   the interests of justice.  And one interest of justice is
14   a trial court getting access to live witnesses, which may
15   be important to a fair resolution of the case at trial.
16   And some of those witnesses might be accessible in one
17   jurisdiction, not in another.  That's why I was asking
18   you about who are these third party witnesses and, to
19   some degree, where do they live.  And there are other
20   interests of justice.

21        If I -- I have another case called Dabarts
22   (sic).  The first filed case was here.  It was a patent
23   case, but I sent it, I think, out to Oregon because I
24   thought it was a race to the courthouse, a kind of forum
25   shopping for tactical reasons.  And I didn't want to abet

15

```
 1      that.   And so what you gave me caused me to have
 2      questions about whether, you know, this is a serious
 3      patent case or whether it's an effort to pummel somebody
 4      who wouldn't sell with expensive protracted litigation.
 5      And if I have that sense, that will weigh in favor of
 6      transfer.
 7                MR. CISLO:   And those allegations are
 8      unrebutted in the papers.   In terms of the way I read the
 9      declarations, I did not see a declaration from Mr.
10      Schultz, the CEO that had these negotiations.
11                THE COURT:   Well, what do you want me to look
12      at?
13                MR. CISLO:   In the moving papers, there is a
14      declaration of Budd Pohle and, in particular, he talks
15      about the communications --
16                THE COURT:   Are you talking about the first one
17      or the second one?
18                MR. CISLO:   The first one, the first
19      declaration.
20                THE COURT:   What paragraph?
21                MR. CISLO:   In particular, paragraph 12 and 13.
22      And if I can direct the court to paragraph 13 in
23      particular.   Mr. Schultz stated:   I want you out of the
24      business.   That's the breakdown on the negotiations
25      because they wanted to buy out my client with some small
```

16

| | |
|---|---|
| 1 | amount. And there's also allegations in this declaration |
| 2 | too about a similar circumstance having occurred with |
| 3 | another distributor. That might be in the other |
| 4 | declaration of Budd Pohle that was in the reply. |
| 5 | THE COURT: In which declaration? |
| 6 | MR. CISLO: The second declaration of Budd |
| 7 | Pohle that is submitted in reply. |
| 8 | THE COURT: What paragraph? |
| 9 | MR. CISLO: I'm sorry, it's in the first |
| 10 | declaration, I apologize, your Honor, paragraph 7, where |
| 11 | he says that I am informed (unintelligible reading). |
| 12 | And what's particularly disturbing is the fact |
| 13 | that these negotiations occurred in, I guess, 2001, and |
| 14 | they kind of waited to bring the suit, that they knew |
| 15 | about the products. Our client's products had been out |
| 16 | there a long time. They didn't sue on the original |
| 17 | patent; they sued on the reissue patent, which they |
| 18 | tweaked to try to, I guess, artably (sic), try to cover |
| 19 | our client's products, which is the new and improved, and |
| 20 | we have opinion letters of counsel that suggests that |
| 21 | there is no infringement whatsoever. I think they only |
| 22 | have one claim, which is a means plus function theories |
| 23 | of elements, which is very narrow to try to allege that |
| 24 | our client's products infringe. I think that's why the |
| 25 | complaint is written in such a bare bones fashion, |

1     because there is some accountability that will occur if
2     this case isn't settled in terms of making claims about
3     infringement that aren't warranted.  So it's safer to
4     make a very broad claim.

5            And so on that basis, your Honor, we think that
6     the interests of justice do serve to have the case
7     transferred.  We do believe that there is no personal
8     jurisdiction over the defendant here because of the lack
9     of any sale of the accused device to any Massachusetts
10    residents.

11            THE COURT:  Why don't I hear from the plaintiff.
12            MR. GUTKOSKI:  Thank you, your Honor.

13            This is a garden variety patent case.  The
14    complaint complies with the draft complaint that's
15    provided in the rule book for patent infringement cases.
16    It provides adequate notice to Sensitech.  There have
17    been extensive discussions between the parties as to what
18    products are or are not involved.  There have been
19    representations by Sensitech in the papers before the
20    court regarding the products that are involved attached
21    to the declarations of Mr. DiRubio, Mr. Vaught, are
22    downloads or screen shots of the Web site of TNT
23    regarding the exact products not only that are accused of
24    infringement here but are the subject of their
25    relationships, their ongoing relationships, their

18

1      admitted ongoing relationships with supermarket chains

2      here in the Commonwealth of Massachusetts.

3              Your Honor, the plaintiffs believe that personal

4      jurisdiction here is not a close question and is

5      certainly not a close enough question to in any way

6      impact or reduce the deference that should be paid in

7      terms of venue.

8              THE COURT:  Let me ask you this.  Which exhibits

9      would you particularly point me to with regard to the

10     admitted ongoing relationships with supermarket chains in

11     Massachusetts?

12             MR. GUTKOSKI:   In regard to supermarket chains

13     or the products, your Honor, I'm sorry?

14             THE COURT:  Well, you just told me that there's

15     evidence of their ongoing relationships, admitted ongoing

16     relationships with supermarket chains here in the

17     Commonwealth.  So I want to know --

18             MR. GUTKOSKI:  Certainly, your Honor.  The

19     declaration of Mr. Pohle, the second one, I believe it's

20     dated -- there are two -- the one dated September 9.

21     Refer you to paragraph 13, to begin with.  There, about

22     two-thirds of the way down, Mr. Pohle discusses the

23     ongoing relationship with Alphas Chelsea and notes at

24     least or about a hundred recorders per year.

25             THE COURT:   In fact, I had been aware of that