33

```
 1    inventors knew or didn't know and what they said and
 2    didn't say to the Patent Office.  Only Mr. Berrian and
 3    his fellow inventors can testify about that.
 4             THE COURT:  Well, this is helpful.  It's taken a
 5    while to get this hearing scheduled.  But as I've said, I
 6    always aim to decide these matters while they're in clear
 7    focus and, therefore, I will.
 8             The arguments today have certainly tested my
 9    tentative views and caused me to refine them somewhat,
10    but they haven't altered them.  And so, for the reasons
11    I'll describe, the motion to dismiss for lack of personal
12    jurisdiction is denied.  The motion to transfer this case
13    to the Central District of California is allowed.
14             There are a lot of facts that I could recite.
15    They are familiar to the parties.  And I think I'll just
16    refer to them as necessary in the course of the analysis.
17             But, essentially, it seems to me that while it's
18    a close case, in view of the applicable standard, there's
19    sufficient information to establish personal jurisdiction
20    for present purposes, although also a meaningful question
21    as to whether personal jurisdiction could be established
22    at summary judgment or at trial.
23             With regard to the standard for determining
24    personal jurisdiction as applicable to this case, my
25    understanding is that the law of the Federal Circuit
```

34

1    applies.
2         The Massachusetts Long Arm statute,
3    Massachusetts General Law, chapter 223A, section 3, which
4    among other things provides personal jurisdiction in
5    cases arising out of the transaction of business in
6    Massachusetts has been interpreted by our Supreme
7    Judicial Court to be coextensive with the limit of
8    federal due process.  That's Automatic Sprinkler Corp,
9    361 Mass 441.
10        So, essentially, I have to decide whether the
11   plaintiff has provided sufficient information to
12   establish the necessary minimum contacts and also whether
13   the defendant has proven at this point that the assertion
14   of jurisdiction does not comport with fair play and
15   substantial justice.
16        I have to accept the uncontroverted allegations
17   in the complaint as true and resolve any factual
18   conflicts in the affidavits in plaintiffs' favor, as the
19   Federal Circuit explained in Electronics for Imaging,
20   Inc, 340 F 3rd 1344 at 1349.
21        When, as here, absent discovery, that is, when
22   no discovery has occurred, plaintiff only has to
23   establish a prima facie case, and that low standard has
24   been met.
25        The plaintiffs' best argument is for specific

35

1    jurisdiction, that is, its allegations that this suit
2    arises out of contacts with Massachusetts by the
3    defendant, Time & Temperature Company, also known as TNT.
4             Accepting the plaintiffs' affidavit as true, the
5    defendant purposely directed activities to Massachusetts
6    residents, and the claims of patent infringement in this
7    case arise out of that activity.
8             Plaintiffs' affidavit asserts that defendant
9    attempts to get its receivers which, like plaintiffs'
10   product, will record changes in temperatures as produce
11   travels across the country to purchasers of produce in
12   Massachusetts as well as elsewhere and that the defendant
13   seeks to get those purchasers of produce to authorize or
14   require the use of the defendant's monitors in shipments
15   to it.
16            The plaintiff has identified five Massachusetts
17   accounts on the list that the defendant faxed to shippers
18   to remind them to use TNT monitors.  More specifically,
19   Sensitech states on information and belief, which in view
20   of the actual facts I find sufficient in the present
21   circumstances, that TNT has direct arrangements with
22   receivers of produce in Massachusetts and that those
23   receivers require their shippers to use TNT monitors.
24            In support of this assertion, Sensitech has
25   submitted a list of Smart Check, defendant's products

36

1   users, which TNT faxed to shippers on March 22, 2002, as
2   a reminder that shippers should use TNT monitors when
3   shipping to the listed companies. That's exhibit A to
4   the Vaught declaration.
5           The fax instructs shippers to check this list
6   for your customers who request Smart Check digital
7   recorders. Sensitech identifies five Massachusetts
8   accounts on the list, suggesting that these companies
9   require their shippers to use TNT Smart Check digital
10  monitors.
11          The five accounts are Alphas Chelsea, Mass; Big
12  Y Foods, Mass; C & S Wholesale, Mass; Community Suffolk,
13  Mass; and Shaw's Supermarket.
14          Sensitech also submitted an April 4, 2002 letter
15  from TNT sales manager to a potential receiver of
16  perishable goods. The letter describes TNT's Smart Check
17  program and identifies C & S and Shaw's as among TNT's
18  accounts. That's the Vaught declaration, exhibit B.
19          Sensitech estimates that solely as a result of
20  TNT's account with Shaw's, TNT annually sold between
21  1,000 and 1500 monitors for use in Massachusetts. Thus,
22  according to Sensitech, although TNT only sells a small
23  number of monitors to purchasers in Massachusetts, it
24  nevertheless indirectly markets larger numbers of
25  monitors for use in Massachusetts through its

37

```
 1    relationships with local receivers.
 2            Sensitech essentially speculates that in
 3    connection with the Smart Check program, TNT possesses
 4    records showing marketing efforts toward Massachusetts,
 5    documentation of sales calls to Massachusetts, receivers,
 6    and records showing monitors returned to TNT from
 7    Massachusetts receivers.
 8            Sensitech also suggests that TNT has probably
 9    provided Massachusetts companies with computing equipment
10    related to Smart Check monitors and with prepaid boxes to
11    facilitate the return of monitors.
12            TNT admits it provides at least a hundred
13    monitors for use in Massachusetts in connection with its
14    relationship with Alphas Chelsea, which the defendant
15    solicited.  I believe that those regular sales are agreed
16    to be the result of direct marketing efforts, and they
17    are a sufficient basis upon which to find purposeful
18    availment.
19            The affidavit and allegations suffice for
20    present purposes to show that the defendant offered
21    allegedly infringing products in Massachusetts and sold
22    some here.  Cases like Maxwell Chase, 79 F Supp 2nd 1364
23    at 1372 to 73, indicate that that's sufficient.
24            Sensitech's claims of patent infringement arise
25    out of this alleged activity.  The defendants have not
```

38

1   shown that it would be so unfair or unreasonable to
2   require it to litigate here that due process would be
3   violated.  But this is a close question, considerably
4   closer than in many cases.
5          As I said, if the case were to continue here,
6   given the number of allegations on information and
7   belief, I would be inclined to require phase discovery to
8   try to resolve the summary judgment issue on -- I'm
9   sorry, try to resolve the personal jurisdiction issue on
10  summary judgment.
11         However, I have decided that it's most
12  appropriate to transfer this case to the Central District
13  of California pursuant to 28 United States Code, section
14  1404A.
15         1404A provides that in the convenience of the
16  parties and the witnesses and the interest of justice, a
17  District Court may transfer any civil action to any other
18  district or division where it might have been brought.
19  Decisions to transfer under 1404A are left to the
20  discretion of the trial court, as the First Circuit said
21  in Codex Corporation, 553 F 2nd 735 at 737, and as
22  Professors Wright & Miller write in section 384-7 of
23  their treatise.
24         In a patent case like this one, transfer venue
25  is procedural in matter and, therefore, the Federal

39

1   Circuit applies the law of the regional circuit review of
2   the transfer order, as it held in Winner International,
3   202 F 3rd 1340 at 1352.
4           There is a presumption in favor of the
5   plaintiff's selection of forum.  It is a presumption that
6   gets differing weight, depending on the circumstances of
7   the case.  I've given that presumption to the plaintiff,
8   but I find that it's overcome here.
9           Among other things, the information not disputed
10  before me now indicates that the plaintiff tried to buy
11  the defendant.  It sued about two years later.  As I
12  said, I've expressed some concern about the bare bones
13  nature of the complaint.  It does not name, for example,
14  any alleged infringing product nor give any guidance as
15  to why it's infringing.
16          The evidence indicates that the plaintiff has a
17  very large market share, perhaps as much as 85 to 90
18  percent with regard to one of the products at issue, and
19  has sued another competitor that bought the competitor.
20          There is a risk that I can't fully assess here
21  that this is a case brought by a larger company against a
22  considerably smaller competitor that is intended to be
23  burdensome for that competitor.
24          Massachusetts is a more convenient forum for the
25  plaintiff and for some of the potential third party

40

1    witnesses. I have a question that I can't really answer
2    as to how important the testimony of third-party
3    witnesses in Massachusetts would be, because I haven't
4    seen the actual defenses yet. But I assume that they
5    have some testimony that it would be most convenient for
6    them to give in Massachusetts.
7        However, the plaintiff has an office in Fresno,
8    California, which is in the Central District of
9    California. It has, I think, two other offices elsewhere
10   in California. Most of the plaintiffs' customers are in
11   California, according to the record. The plaintiff
12   regularly does business in California and I find can,
13   without undo convenience, litigate there, if necessary.
14       The defendant has no office or employees in
15   Massachusetts. It has third-party witnesses who, it
16   seems to me at this point, would have admissible evidence
17   with regard to the way that its devices are structured
18   and function. Its employee witnesses are in California.
19   It has more limited means to litigate in Massachusetts.
20   So the balance of hardship, I find, favors the defendant.
21   But I'd say most important to me is it seems to me that
22   the third-party witnesses who are likely to be
23   unavailable for trial appear to be in California rather
24   than in Massachusetts, and this is a major consideration,
25   as I said in my Brant Point decision, 671 F Supp 3.

                                                                    41

1         In addition, as the Supreme Court has held, the
2    public interest factors of systemic integrity and
3    fairness, in addition to private concerns, are part of
4    the administration of justice.  That's Stewart
5    Organization, 487 US 22 at 30.
6         Here, as I said, the plaintiff tried to buy a
7    much smaller competitor, failed, waited two years, and
8    then sued for alleged patent infringement without
9    identifying the alleged infringing product or products.
10        The personal jurisdiction issue may -- well,
11   personal jurisdiction over the defendant may on summary
12   judgment prove not to exist in Massachusetts.  As I said
13   earlier, it's possible in this case, if I were keeping
14   it, that I would phase discovery.  I think, I find it's
15   most fair and efficient in the interest of justice to
16   send this case to the Central District of California
17   where the defendant has filed an antitrust case that can
18   be joined with this one.  There should be no questions of
19   jurisdiction, personal jurisdiction to impede its
20   progress, and the parties can get a resolution on the
21   merits.
22        So I will enter an order just memorializing
23   those conclusions.  If the parties would like a record of
24   the decision, they can order the transcript.
25        Court is in recess.

42

CERTIFICATE

I, JUDITH A. TWOMEY, RPR, Official Court Reporter for the United States District Court, District of Massachusetts, do hereby certify that the foregoing transcript, pages 1 through 42 inclusive, was taken by me stenographically and thereafter by me reduced to transcription and is a true record of the proceedings in the above-entitled matter to the best of my ability.


JUDITH A. TWOMEY, RPR
Official Court Reporter

EXH B

4

1  standard right, I'd have to treat it as if it really is
2  five for present purposes, although it seems to me that
3  personal jurisdiction is a sufficiently close question
4  and, if the case is not dismissed and stays here, whether
5  there should be phased discovery and summary judgment on
6  that issue is a question to be addressed.
7         But I do at the moment tend to think that
8  there's barely enough to, for present purposes, establish
9  personal jurisdiction. In part because it is such a
10 close question and in part for other reasons, I'm willing
11 to seriously consider the transfer. I know that
12 frequently -- well, I know that the plaintiffs' choice of
13 forum deserves some weight, but that weight varies in the
14 circumstances.
15        I frankly wonder what this case is really about.
16 I don't think I've ever seen a more sparse complaint. I
17 have concerns about whether it satisfies the requirements
18 of notice pleading. If I've read it right, it doesn't
19 allege what the infringing devices are or what ways in
20 which they infringe.
21        And my sense is that the relative resources of
22 the parties are different, and I'm concerned that it
23 might be most fair and efficient if this case is going to
24 proceed to have it proceed in California rather than
25 disappear on personal jurisdiction on summary judgment.

EXHIBIT B
PAGE 54

39

1   Circuit applies the law of the regional circuit review of
2   the transfer order, as it held in Winner International,
3   202 F 3rd 1340 at 1352.
4           There is a presumption in favor of the
5   plaintiff's selection of forum. It is a presumption that
6   gets differing weight, depending on the circumstances of
7   the case. I've given that presumption to the plaintiff,
8   but I find that it's overcome here.
9           Among other things, the information not disputed
10  before me now indicates that the plaintiff tried to buy
11  the defendant. It sued about two years later. As I
12  said, I've expressed some concern about the bare bones
13  nature of the complaint. It does not name, for example,
14  any alleged infringing product nor give any guidance as
15  to why it's infringing.
16          The evidence indicates that the plaintiff has a
17  very large market share, perhaps as much as 85 to 90
18  percent with regard to one of the products at issue, and
19  has sued another competitor that bought the competitor.
20          There is a risk that I can't fully assess here
21  that this is a case brought by a larger company against a
22  considerably smaller competitor that is intended to be
23  burdensome for that competitor.
24          Massachusetts is a more convenient forum for the
25  plaintiff and for some of the potential third party

EXHIBIT B
PAGE 55

41

1        In addition, as the Supreme Court has held, the
2   public interest factors of systemic integrity and
3   fairness, in addition to private concerns, are part of
4   the administration of justice. That's Stewart
5   Organization, 487 US 22 at 30.
6        Here, as I said, the plaintiff tried to buy a
7   much smaller competitor, failed, waited two years, and
8   then sued for alleged patent infringement without
9   identifying the alleged infringing product or products.
10       The personal jurisdiction issue may -- well,
11  personal jurisdiction over the defendant may on summary
12  judgment prove not to exist in Massachusetts. As I said
13  earlier, it's possible in this case, if I were keeping
14  it, that I would phase discovery. I think, I find it's
15  most fair and efficient in the interest of justice to
16  send this case to the Central District of California
17  where the defendant has filed an antitrust case that can
18  be joined with this one. There should be no questions of
19  jurisdiction, personal jurisdiction to impede its
20  progress, and the parties can get a resolution on the
21  merits.
22       So I will enter an order just memorializing
23  those conclusions. If the parties would like a record of
24  the decision, they can order the transcript.
25       Court is in recess.

EXHIBIT  B
PAGE  56